QUANAH, A. & P. RY. CO. v. LANCASTER.
(No. 1387.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 6, 1918. Rehearing Denied Jan. 8, 1919.)

1. CONTINUANCE ⬥⟶24 — ABSENCE OF WITNESS—CUMULATIVE EVIDENCE.

There was no error in denying continuance, where testimony of absent witness would have been merely cumulative.

2. APPEAL AND ERROR ⬥⟶662(3)—BILL OF EXCEPTIONS—QUALIFICATION.

Where appellant accepted bill of exceptions as qualified by court, he is bound by the court's statement therein, which will be presumed to be true.

3. EVIDENCE ⬥⟶488 — OPINION — VALUE — GRASS.

Witnesses, shown to have lived in the county 19 and 27 years, respectively, could testify upon issue of value of grass burned by fire alleged to have been set by defendant railway company's engine.

4. EVIDENCE ⬥⟶213(1) — OFFER OF COMPROMISE—ADMISSIBILITY.

Plaintiff's testimony with reference to offer of defendant railway company to make settlement for damages due to fire alleged to have been caused by its engine *held* inadmissible.

5. APPEAL AND ERROR ⬥⟶1050(1)—ADMISSION OF INCOMPETENT EVIDENCE — PREJUDICIAL ERROR.

Admission of testimony with reference to offer of defendant railway company to make settlement for damages due to fire started by its engine was prejudicial error.

6. TRIAL ⬥⟶203(3)—INSTRUCTIONS—AFFIRMATIVE DEFENSE.

Defendant had the right to have his defense presented to the jury in an affirmative manner.

7. TRIAL ⬥⟶140(1) — CREDIBILITY OF WITNESSES—PROVINCE OF JURY.

The credibility of witnesses is a matter exclusively within the province of the jury.

Appeal from District Court, Motley County; J. H. Milam, Judge.

---

⬥⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by J. C. Lancaster against the Quanah, Acme & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Jno. P. Marrs, of Quanah, and G. E. Hamilton, of Matador, for appellant.

T. T. Bouldin, of Matador, for appellee.

HALL, J. Appellee, Lancaster, sued appellant, railway company, for damages in the sum of $3,750, for alleged injury to the grass, turf, and timber on certain land owned by appellee in Motley county, resulting from fire set out by defendant's engine on or about the 15th day of July, 1916. Appellee alleged that appellant's locomotive was defective and improperly built, in a poor state of repair, and so carelessly, negligently, and unskillfully managed that fire escaped therefrom and ignited the grass and other combustible matter which appellant is alleged to have negligently permitted to accumulate upon its right of way. Appellant alleged the good condition of its engines; that they were skillfully operated; denied that it permitted combustible matter to accumulate upon its right of way, and alleged that during the four or five days just prior to the fire the grass and weeds on its right of way, had become dry enough to burn, but had been too green to burn prior to that time; that hot winds during the last four or five days had suddenly dried up the vegetation and grass, rendering it sufficiently dry to burn, but that said winds made it unsafe to try to burn off its right of way at that time; that it had attempted to burn off the right of way only a day or two before the fire, but found that the high winds made the effort dangerous.

[1] The first assignment is predicated upon the action of the court in overruling appellant's second motion for a continuance. The motion was made on account of the absence of the witness J. N. Jackson, whose testimony would have been merely cumulative. The court qualified the bill of exceptions as follows:

"Motley county is a stock-raising county, and in the opinion of the court there were living in said county a number of stock men who were as fully acquainted with the market value of this grass as the witness Jackson, and these stock men could have been procured by the defendant as witnesses to the value of the grass in this cause."

[2] Having accepted the bill of exception with this qualification, appellant is bound by the court's statement, which we must presume is true. Taking the bill in connection with the court's qualification, there was no abuse of judicial discretion in overruling the application.

[3] By its second assignment appellant insists that the court erred in permitting the witness L. C. Stearns to testify upon the issue of the value of the grass; and by the third assignment the same objection is made to the testimony of J. R. Moore. These witnesses are shown to have lived in Motley county 19 and 27 years, respectively. The general rule is that old settlers who own pastures in the vicinity of where the injury occurred are qualified to testify upon the value of grass. Galveston, etc., R. R. v. Polk, 28 S. W. 353; Gulf, etc., R. R. v. Dunman, 85 Tex. 176, 19 S. W. 1073; Gulf, etc., Ry. v. Wedel, 42 S. W. 1030. The witness Stearns testified that he was acquainted with Lancaster's land, and knew the condition of the grass on it at the time of the burn. On direct examination he further stated that he was acquainted with the market value of the grass at the time, and that such market value was not less than $1 per acre. He was put through several rather severe cross-examinations; and, while we find occasional expressions which tend to show that his knowledge was in a measure hearsay, he testified:

"I don't know of anybody this year paying as much as $1 per acre lease for grass, but I have offered that. * * * I don't know of anybody that has paid that, or that would take that for it, or getting that for it, even. * * * I made investigations with reference to getting grass at that time, and I didn't hear of any at all I could lease for less than $1 per acre or could use at all. I tried to get land, and offered $1 per acre for it."

Moore testified:

"I don't know of any grass leasing along about the 15th of July last year in this country, but I do know of men offering $1 per acre for it, and did not get it. I didn't hear of anybody leasing land for $1 per acre. I can't say that I knew of a lot of land leasing for a good deal less than $1 per acre. It is not a fact that the $1 per acre grass was a month or two after this fire."

Under the rule above announced, and after reviewing the testimony of these witnesses at length, we have concluded that there was no error in the court's ruling.

While the plaintiff was a witness in his own behalf, he was asked by his attorney: "Did the Q., A. & P. Ry. Co. offer to make a settlement with you for this grass?" And the witness answered: "Yes, sir; they did." Appellee insists that this testimony was properly admitted to show an admission of liability on the part of appellant. On cross-examination appellee further testified:

"They offered to pay me 15 cents at the start, and later on they offered me 25 cents. They did not offer me any more later than that. You (appellant's attorney) did not offer me 50 cents per acre for that. I do not remember that you came in Judge Bouldin's office after that and told me you would give me 50 cents per acre if I would settle without a lawsuit, and pay me right then. I know I made you a proposition, and you said there was not any use in

figuring on it. You knew they would not accept it; that was, $1 per acre. I don't remember that you offered me 50 cents for the grass. When they offered me 25 cents per acre, I guess you would call it a compromise. I suppose that was offered to avoid a lawsuit. I refused to accept it. We could not get together on it."

On redirect examination he testified:

"I had not said anything to them about a compromise when they came to me and offered that settlement. They did not say anything about a compromise."

Cross-examined the second time, he testified:

"When they offered me that, I don't remember what words they used. I think either Mr. Summers or Mr. Gray, or maybe both of them, came down here to see me at my place. I never refused to talk to them. I didn't tell them I had employed an attorney. I had not at that time. I don't think I had talked to a lawyer. I have no recollection of talking to any lawyer about it. I suppose they came to see me in an effort to settle the matter without a lawsuit."

The Courts of Civil Appeals are not in harmony upon this question. Galveston, etc., Ry. Co. v. Green, 35 S. W. 819; St. Louis Southwestern Ry. Co. v. Smith, 33 Tex. Civ. App. 520, 77 S. W. 28; M., K. & T. Ry. Co. of Texas v. Sullivan, 157 S. W. 194 (writ of error granted); Texas Co. v. Strange, 154 S. W. 327; Iowa Mfg. Co. v. Taylor, 157 S. W. 171. I. & G. N. Ry. Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515, is a case where the appellee demanded $200 in payment of his damages, and appellee agreed to pay it as soon as he could hear from the auditor at St. Louis. It was objected that the evidence was inadmissible because it was an offer of compromise. Judge Gaines said:

"The principal is elementary that an offer to compromise a prospective suit, if expressly or impliedly made without prejudice, cannot ·be admitted in evidence when objected to. To permit the introduction of such offers tends to discourage the adjustment of suits, and for that reason is against the policy of the law. If the object of the party in making the offer was to buy his peace (which is impliedly manifested by a mere proposition to pay a sum in settlement), it is deemed to have been made without prejudice, and will be excluded. * * * Numerous authorities may be cited to show that the admission of a fact pending a negotiation for compromise may be admitted; but we have found none that a proposition, which has not been accepted and become a contract, is legal testimony. In Home Insurance Company v. Baltimore Warehouse Company, supra [93 U. S. 527, 23 L. Ed. 868], the court says: 'The letter was an offer of compromise, and, as such, upon well-recognized legal principles, it was inadmissible. It contains no statement which can be separated from the offer and convey the idea which was in the writer's mind.' This shows the distinction between a fact admitted pending an attempt to compromise and a mere proposition of settlement. The testimony introduced in the case before us was purely an offer by Gooch to pay $200 in settlement of appellee's claim, subject to the approval of the auditor of the company, and, though accepted by appellee, could not, under the rules laid down above, be admitted in evidence over appellant's objection."

[4, 5] Under this holding the testimony of appellee, with reference to the offer, was clearly inadmissible, and we think is prejudicial error.

[6] The fifth assignment of error complains of the court's failure to present to the jury appellant's defense in an affirmative manner. We think this criticism is well taken. Appellant insists that it used ordinary care to prevent the accumulation of dry grass and combustible material upon its right of way, and used ordinary care in its effort to remove such matter and prevent the fire. Appellee insists that these questions were submitted to the jury in the general charge, and in his brief refers to pages of the record upon which we find special issues requested by appellant and not submitted.

[7] It is insisted under the sixth assignment that the verdict is contrary to and unsupported by the evidence, in that the uncontroverted evidence shows the defendant used all reasonable care and diligence in burning off its right of way to prevent the fire. One witness for appellee testified that the only evidence of any burning on the right of way was at the scene of the fire. Without this testimony, however, the question resolves itself to the fundamental one of the credibility of the witnesses, which is a matter exclusively within the province of the jury; and what is here said disposes of the seventh assignment, which raises the question of the sufficiency of the evidence to show that defendant's engine caused the fire.

The judgment is reversed, and the cause remanded.