Gulf, Colorado & Santa Fe Railway Company v. R. L. Dunman.

No. 7474.

1. **Measure of Damages.**—The appellant, under contract with Dunman, entered upon certain lands and became entitled to stipulated rights, upon condition that the appellant company should fill with water once a week a certain tank owned by Dunman. The company failed to comply with the conditions, and Dunman brought suit for the land and for damages, thus ending the contract. Suit was brought February 20, 1887. The cause was tried October 15, 1889. The court instructed the jury that the plaintiff was entitled to recover "the value of the use and occupation of the land and privileges held by the defendant company." *Held*, that the instruction gave the correct rule as to the

damages subsequent to February 20, 1887; as to damages which had accrued prior to that date, they would be measured by the contract, viz., the loss from the failure to fill the tank as contracted for.

2. Same — Case Adhered to.—Railway v. Dunman, 74 Texas, 265, adhered to.

3. Opinion Testimony—Nonexpert.—It was competent to allow a witness to give his opinion as to the value of the use and occupation of a tract of land, the witness being familiar with the facts, although there was no market value known to said witness for like property.

4. Improvements as Fixtures.—The lessee or purchaser forfeiting his estate had erected valuable improvements. Whether the structures so erected should remain as part of the realty and go to its owner will depend upon the character of their use and their annexation to the soil—a mixed question of law and fact. If there has been no permanent annexation they would be removable fixtures, and not a part of the realty.

APPEAL from Coleman. Tried below before Hon. J. W. TIMMINS.

*J. W. Terry*, for appellant.—1. The measure of damages for breach of the contract to fill the tank with water once a week, which plaintiff was entitled to recover to the date of the filing of this suit, was the reasonable value of the use of 5000 gallons of water per week during the period in question.

2. In the absence of any market value, and in the absence of any showing that the plaintiff was an expert, and better qualified than any one else to express an opinion as to the value of the water privileges, the jury should have been permitted to determine the value of the same, in view of all the facts and surrounding circumstances, uninfluenced by the necessarily prejudiced opinion of the plaintiff.

3. Personal property of a railway company, used in connection with the operation of its road, and necessary to such operation, does not become the property of the owner of the land on which it is placed with the permission of the owner.

No brief for appellee reached the Reporter.

MARR, JUDGE, *Section A.*—This case was before the court at a former term, and will be found reported in 74 Texas, 65. The original petition was filed February 21, 1887. An amended petition, filed October 7, 1889, alleged, in substance, that on February 10, 1886, plaintiff executed a deed, whereby plaintiff conveyed to defendant a sufficient quantity of land upon which to erect a pump, boiler, and building, for the purpose of supplying defendant's engines with water; and also right of way to lay a pipe from the said pump to said defendant's railway right of way; the plaintiff conveyed said land and privileges to defendant upon the express condition that said defendant would once in every seven days fill with

water a certain tank, then and there owned by the plaintiff, not to exceed 5000 gallons of water, and upon the failure of defendant to comply with said condition, said land and privileges were to revert to plaintiff. Immediately upon the execution of the deed, the defendant erected its pump and other improvements, and has since used the same for the purpose of supplying its engines with water; that the defendant had failed and refused to comply with the conditions requiring it to fill the tank with water once in seven days, to the plaintiff's damage in the sum of $1000. Plaintiff further alleges that defendant has been in possession of said above described land, using and enjoying the same for the purposes of its water supply, from February 10, 1886, up to the present time; that the reasonable value of the use of said land and privileges is $500 per annum. Plaintiff alleges that defendant is indebted to him for the reasonable rental value of said land, rights, and privileges from February 21, 1887.

Defendant pleaded a general denial and plea in reconvention, which was afterward withdrawn. The case was tried by a jury, and resulted in a verdict and judgment for plaintiff for the sum of $1329.94, and for a recovery of the land and privileges occupied by the defendant.

The appellant assigns as error the charge of the court upon the measure of damages, and particularly as to the damages from the 1st day of March, 1886, to the 20th day of February, 1887, upon which latter date the plaintiff re-entered, in legal contemplation, and put an end to the contract by the institution of suit, as was expressly decided upon the former appeal.

The appellant also submits in this connection the following assignment of error, viz.:

"The court erred in refusing the special charge of defendant, as follows: The jury are instructed not to consider any question of damages for breach of the contract, plaintiff not having shown himself entitled thereto. You will exclude from your consideration any rents or damages between March 1, 1886, and February 20, 1887."

The court charged the jury, in substance, that if the defendant had failed to fill the tank as required, to find damages in plaintiff's favor for breach of the contract, and that the measure of damages would be the value of the use and occupation of the land and privileges held by the defendant, from March 1, 1886, to February 20, 1887, and you will find as damages in his favor whatever said use and occupation is shown by the evidence to be worth, not to exceed the sum of $1000. That plaintiff was also entitled to recover his land, and further, the value of the use and occupation of the land and privileges, whatever the evidence shows the same to be worth, from February 20, 1887, up to the present time, not to exceed $1250.

"The privileges held by the defendant," in addition to the use of the

land, included the right to obtain water for its engines, etc., out of a pool of water belonging to the plaintiff, and which seems to have afforded the only permanent water accessible to the defendant in that locality. The jury rendered the following verdict: "We, the jury, find for plaintiff, and assess his damages at $800 from the 10th day of February, A. D. 1886, to the 20th day of February, A. D. 1887, and assess rents at $200 per year from the 20th of February, 1887, up to the present time." The trial occurred below on the 15th day of October, 1889.

When this case was before the Supreme Court upon the first appeal by the present appellant, Judge Henry, in delivering the opinion, among other things, said:

"The institution of this suit was equivalent to such re-entry, but there having been none before, we do not think the plaintiff was entitled to recover for the use and occupation of the land before that date. The court erred in not sustaining defendant's exception to plaintiff's petition, insomuch as it sought a recovery for the use and occupation of the premises before suit brought, and in the charge given on the same subject. The defendant having agreed with plaintiff that it would, in consideration of his conveyance to it of the land and privileges in controversy, during the time it held them, fill his tank with water every seven days, not to exceed 5000 gallons, and to surrender the land and privileges when it ceased to do so, must be held liable in this action for the entire obligation. The agreement plainly provides that the filling of the tank should be the compensation paid for the use of the property conveyed, so long as the contract *remained in force*. Upon the failure of the defendant to comply with the condition subsequent, we know of no reason why plaintiff should not, in pursuance of the terms of the contract, re-enter into possession of the land, and also recover damages for the failure to fill the tank as agreed up to the date of such re-entry, or to the institution of this suit."

We are of the opinion that the charge of the court below upon the measure of damages is not in entire harmony with the views of the Supreme Court upon that subject which we have just quoted. The charge is materially erroneous, as we conceive. The plaintiff was not entitled to recover "the value of the use and occupation of the land and privileges held by the defendant," under the contract prior to the 20th day of February, 1887. The contract was in force until that date, and the parties, in legal contemplation, were proceeding under it until the plaintiff elected to put an end to it at that time, as he had the right to do, on account of the breach thereof by the defendant. Until then, the defendant had the right to use and occupy the premises and privileges, and would only be liable for the contract price, or damages resulting to the plaintiff on account of its failure to discharge the consideration as fixed by the contract. The measure of damages prior to the institution of the suit upon the 20th day of February, 1887, would therefore be such actual

damages as the plaintiff may show that he sustained on account of the failure of the defendant "to fill his tank with water every seven days, not to exceed 5000 gallons," and which were the proximate result of such breach of the contract, in view of the surrounding circumstances of the case.

As to the measure of the damages after the the termination of the contract by the institution of the suit, we think that the court gave the jury the correct criterion for their guidance. This point was not expressly decided upon the former appeal, but the language of the opinion leaves no doubt that such was the conclusion of the Supreme Court. We fully coincide with that view of the subject. After the contract was terminated, the defendant held the premises and privileges without any legal right, and at its peril, and could not thereafter confine the plaintiff to the value of the original consideration. The defendant thereupon became bound to pay the reasonable value of the use of the premises and privileges, whatever that was, as shown by the evidence.

But upon the first point, as we have seen, the measure of damages would be different, because we can not assume that the value to the plaintiff of having "his tank filled," etc., "from the 10th day of February, 1886, to the 20th day of February, 1887," would be exactly the same as or equivalent to "the value of the use of the premises and privileges held by the defendant" during that time. It is true that the plaintiff granted these privileges for that consideration, but their real value may in fact have been worth a great deal more or a great deal less. A party can not sue upon an express contract and recover as upon a quantum meruit. If A rents B a dwelling house at $10 a month, which B fails to pay, A will be confined to the contract price, and can not recover a different sum upon proof of the market or reasonable value of the rent. 3 Suth. on Dam., 110.

The verdict of the jury did not specify the items of the first finding; but as they had been misdirected upon the point by the charge of the court, they were doubtless misled thereby as to the proper criterion for assessing the damages; and the error of the court became specially prejudicial to the defendant, in view of the evidence offered by the plaintiff of the value of the enjoyment of the land and privileges before suit.

We do not think that the court erred in refusing to allow the special instruction of the defendant, quoted above, in the shape in which it was presented, but it was sufficient to have called the attention of the court to the error in the general charge.

It is also assigned as error, that the court should not have admitted so much of the following testimony as involves the opinion of the witness as to value, over the objections of the defendant, viz.:

"Plaintiff testified to the failure of the defendant to comply with the condition requiring the tank to be filled once a week. During the years

1886 and 1887 the defendant used from 20,000 to 30,000 gallons of water per day. Since that time they have not used so much, probably 10,000 to 15,000 gallons per day. The years 1886 and 1887 were very dry, and water was a great object with everybody. The streams over which the railroad runs were all dry, from Goldthwaite on the east to my place, and from my place to Ballinger on the west. Knowing the amount of water taken and used by the company and all facts surrounding their use of the land and water privileges, I think that the reasonable rental value of same was $1000 per annum for the year 1886, and the rental value of the same was reasonably worth $1000 per year for each year since that time up to the present time. The land taken up by the house, pump, and coal shed of defendant amounts to about three-quarters of an acre, and their pipe is laid from the pump across my field about 1500 feet to the company's tank on the railway track. I do not know of any market value of said water privileges, as this is the only case of the kind I know of."

Cross-examination: "Hord's Creek, that runs through my place, and on which the tank is located, runs dry sometimes and stands in pools, but the pool at which the tank is located never goes dry. It is fed by underground springs. The water that was pumped from the pool would not bring it lower than two or three inches, which would fill again in a few hours."

The above extract is from the brief of the appellant. The appellee has not appeared in this court by brief or argument. The testimony of the plaintiff in reference to the value of the rights and privileges in question was objected to by counsel for defendant, upon "the grounds that no market rental value had been shown, and that in the absence of a market rental value, the witness was not entitled to give an opinion." We think that the court did not err in overruling the objections and admitting the evidence, under the facts and issues in this case. Gonzales College v. McHugh, 21 Texas, 257; Carroll v. Welch, 26 Texas, 147; Railway v. Klaus, 64 Texas, 293.

Where the article, privilege, or property in question has no market value, or is not shown to have any, then other means or standards, in the very necessity of the case, must be resorted to in order to ascertain its real value—the intrinsic qualities of the thing, its uses, and any facts which would naturally affect the mind of the party buying or selling in determining the price to be asked or given, and relevant to the question of value; and the authorities just cited sustain the proposition, that a nonexpert witness may give his opinion upon subjects which do not require special skill and learning, and especially so when he has first stated the facts upon which he predicates his opinion. His opinion, however, is admitted only as such, and the jury are to determine how much weight it is 'tled to, in view of the other evidence adduced. Abb. Tr. Ev., 30% Juth. on Dam., 375, 378, 798.

" Where the amount of rent or compensation for the use has not been fixed by the agreement, it is a quantum meruit claim; the landlord is only entitled to what it was reasonably worth, and this must be ascertained by the jury upon evidence. * * * The opinions of witnesses having knowledge of the particular subject are generally held admissible on questions of value." 3 Suth. on Dam., 110, 112; Railway v. Maetze, 2 Willson's C. C., sec. 636. The witness was conversant with the land and privileges and all of " the facts bearing upon the value of their use." Railway v. Maetze, supra. Of course, the proof of the value of the use and occupation prior to the termination of the contract, as already explained, ought to have been excluded, had it been objected to on that ground.

The judgment as rendered in the court below may perhaps admit of the construction, as claimed by the appellant, that it awards to the plaintiff " the steam pump and boiler and iron pipe," etc., erected by the defendant upon the land in dispute. Of this part of the judgment the appellant complains as a fundamental error, as the issue was not mooted in the court below.

In view of another trial, we need only to say, that whether the plaintiff should recover the structures or appliances which the defendant has placed upon the land, will depend upon the character of their use and annexation to the soil, which will be a mixed question of law and fact. If there has been no permanent annexation, they would still be removable fixtures and not a part of the land. Tied. on Real Prop., sec. 2; Moody v. Aiken, 50 Texas, 65; Hutchins v. Masterson, 46 Texas, 554. We do not think that the decision of the question is controlled by the case of Preston v. Railway, 70 Texas, 375. The facts are not shown to be the same.

On account of the error in the court's general charge as before indicated, the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 7, 1892.