## CURRIE et al. v. HARRIS.

### No. 9376.

Court of Civil Appeals of Texas. Austin.

June 2, 1943.

Rehearing Denied June 16, 1943.

Robt. T. Neill, of San Angelo, for appellants.

Hughes & Hardeman, of San Angelo, for appellee.

McCLENDON, Chief Justice.

The sole question the appeal presents is whether the title to one-half interest in delay rentals, thereafter accruing and paid under two mineral leases covering 20 sections in Sterling County, passed to appellants (Currie and Wahlenmaier, plaintiffs below) under a grant in a drilling contract between appellants and appellee (R. H. Harris, defendant below). The controlling facts, which are without dispute, are:

R. H. and F. L. Harris owned a large number of sections of land in Sterling and other counties. March 7, 1928, R. H. Harris and wife conveyed his half interest in 63 of these sections, including the 20 sections in question, to F. L. Harris, the deed reserving to R. H. Harris, his heirs and assigns, "all of his one-half interest in and to all oil, gas, or other minerals of whatsoever kind that may be found in, on or under the above described lands during a term of fifteen (15) years next ensuing after date of this deed and no part of same is conveyed by this deed.

"And it is further agreed that if any development of the oil, gas or mineral rights on said lands is begun under any lease or drilling contract during the next fifteen (15) years, and such royalty payments are begun to accrue within the said term of fifteen years, that when once begun or having accrued within the said time they shall continue thereafter to be paid in equal one-half portions to the said R. H. Harris and F. L. Harris as long and whenever such royalty payments shall be made without respect to the time or term thereof."

February 20, 1941, Lulu C. Harris (surviving wife of F. L. Harris) and R. H. Harris and wife, designated as Lessor (whether one or more) executed two mineral leases to Humble Oil & Refining Company, one covering 12 and the other 8 of the sections. These leases provided for delay rentals aggregating $7,040 per annum, for a period of ten years under the usual "unless" clause, the rentals to be paid to "Lessor" or to a designated bank as "lessor's agent."

December 22, 1941, appellants and appellee executed a contract whereby the former agreed to drill "an oil and gas test well" "on some survey of the Harris lands in

Block Six (6) H. & T. C. Ry. Co., Sterling County," selected by them, to a depth of 1,200 feet "or as much deeper as in their judgment may probably result in the production of oil and gas in commercial quantities." The drilling was to begin by February 1, 1942. The contract recited the reservations in the deed of March 7, 1928, and that appellee was "desirous that development be had on said land because of the provisions heretofore set out." The following provision of the contract is the basis of appellants' claim:

"In consideration of the foregoing R. H. Harris does hereby grant, bargain, sell and convey to E. M. Wahlenmaier and Stephen C. Currie the one-half (1/2) interest in all oil, gas and other minerals and royalty payments reserved by R. H. Harris in his deed heretofore described to F. L. Harris in the following surveys in Block Six (6), H. & T. C. Ry. Co., Sterling County: (here was inserted the 20 sections by number covered by the two Humble leases).

"If, however, said well shall be drilled on any one of the surveys immediately above described, parties of the second part (appellants) shall have no interest in the oil and gas or royalty of said survey on which such well is drilled, said one-half interest belonging exclusively to grantors, but the one-half (1/2) interest hereby and now conveyed in the other surveys immediately above set out shall not be affected."

January 27, 1942, appellants began drilling a well on one of the designated sections (not one of those covered by the Humble leases), and drilled to a depth of 1,407 feet by February 17, 1942, when "water sand" was struck and the well was abandoned and plugged. No issue is raised questioning appellants' full compliance with their contract. February 18, 1942, Humble deposited in the designated bank the delay rentals accruing March 7, 1942, one-half the amount of which was passed by the bank to the credit of appellee. Appellants made demand on appellee for these rentals, and were refused. This suit was filed thereafter and tried to the court and judgment rendered November 24, 1942, denying appellants recovery.

■ We have reached the conclusion that the delay rentals sued for passed to appellants by the grant in the contract of December 22, 1941. We rest this conclusion upon the following propositions which we regard either as well established or as necessary deductions from principles which are well established in the law of oil and gas:

■ 1. Delay rentals are incident and appurtenant to the mineral title, and when that title has been severed from the general fee title (whether by reservation or grant) the right to thereafter accruing delay rentals is in the owner of the mineral title and the owner of the general fee title has no interest therein.

■ 2. The grant to appellants vested in them, without any exception or reservation, the title to one-half interest in the minerals to the full extent of appellee's interest therein, including every right appurtenant thereto.

Whatever doubt may have been cast upon the first above proposition by expressions in Caruthers v. Leonard, Tex.Com. App., 254 S.W. 779, was effectually dispelled by Judge Greenwood's opinion in Hager v. Stakes, 116 Tex. 453, 294 S.W. 835. In the Caruthers case two questions were presented: (1) Whether future delay rentals passed under the terms of the instrument there involved; and (2) whether the possibility of reverter inhering in the grantor in an oil and gas lease is assignable. With this latter question (now no longer in doubt) we are not here concerned. The instrument there involved conveyed one-half undivided interest in and to all the minerals in, on and under the described land. It contained, however, this proviso: "And this conveyance is subject to the terms and provisions of a (described prior) lease (if valid)".

In holding that delay rentals thereafter accruing under the prior mineral lease did not pass to the grantee, it was said that after execution of the prior mineral lease nothing remained in the grantor except a possibility of reverter, one-half interest in which alone passed by the grant. It was also said that the delay rental money "was paid for the privilege of drilling anywhere on the surface of the land. It did not arise from natural gas, oil, or any of the minerals in which Leonard bought a one-half interest, and is not, in any manner, connected with those minerals."

In Hager v. Stakes, and in the later case of Sheffield v. Hogg, 124 Texas 290, 77 S.W.2d 741 (in connection with the latter case see also Sheppard v. Stanolind Oil & Gas Co., Tex.Civ.App., 125 S.W.2d 643—error refused), the court had for adjudication the nature of royalties in every character of lease reservation, and the holding:

was that royalties, whether payable in kind or their value or in money, were an incident of the mineral title, part of the realty, takable as realty against the royalty owner, and otherwise governed by real estate law. In the course of the Hager v. Stakes opinion [116 Tex. 453, 294 S.W. 838] it was said: "There are statements in the opinion in Caruthers v. Leonard, [Tex.Com. App.] 254 S.W. on pages 782 and 783, to the effect that the lease there discussed did vest title in the lessee to all the minerals in place, leaving the lessor nothing save a possibility of reverter. The opinion in that case was. by the Commission of Appeals, and was not adopted by the Supreme Court, and therefore the court did no more, as has repeatedly been pointed out, 'than to simply adopt the view of the Commission as to the determination to be made of the cause.' McKenzie v. Withers, 109 Tex. [255] 256, 206 S.W. 503; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. [160] 167, 254 S.W. 290, 29 A.L.R. 566. The Caruthers case was rightly determined, regardless of the legal effect of the lease in reserving a mineral estate to the lessor; for Leonard was not entitled to recover any part of the rentals for which he sued, because the writing under which he claimed expressly stipulated that, if the lease under which the rentals accrued was valid, then he (Leonard) bought subject to all the terms of such lease, and the lease was valid and one of its terms provided for the payment of such rentals."

This language clearly disapproved the holding in Caruthers v. Leonard to the effect that nothing remained in the lessor but the possibility of reverter, and that delay rentals were incident to the surface or general fee, and not to the mineral title. The judgment adopted in the Caruthers case was held correct under the express holding that the mineral deed there involved did not, under its above stated terms, convey delay rentals, but (by implication, at least) excluded them. Appellee has cited a quotation by this court in Andrews v. Brown, Tex.Civ.App., 283 S.W. 288, embodying the holding in the Caruthers case that delay rentals were not incident to the mineral title. That case did not involve delay rentals, or a consideration of their nature or quality. The questions there involved related to the nature and quality of a cash bonus, and its relation to the life estate and remainder in the mineral title. It was there held to be part of the consideration for the entire mineral

title, and owned by the mineral remainderman, subject to a life estate therein in the mineral life tenant. In a somewhat confusing opinion by the Commission of Appeals (Tex.Com.App., 10 S.W.2d 707), it was held that the grant there involved did not reserve a mere life estate in the minerals, but a fee title therein determinable upon the death of the grantor. In any, event that seems to be the holding in the Commission opinion. Neither that opinion nor that of this court in any way adjudicated the issue of the nature or quality of delay rentals, nor has any authoritative bearing upon the question at bar. In this connection we refer to the very able article in Texas Law Review, issue of December, 1931, by Prof. Summers, entitled Transfer of Oil and Gas Rents and Royalties.

That delay rentals are incident to the mineral and not to the surface title follows ineluctably from the nature and effect of a severance of the mineral title and its necessary incidents. It is elementary in the law of oil and gas that an unconditional and indefeasible conveyance of the mineral title carries with it as a necessary incident (whether expressed or not) the right to use the surface for exploration for the discovery of minerals, and for mining operations to extract them from the soil and market them. This right constitutes a servitude or easement upon the surface title. It is no part of the title but is carved out of it as an incident attaching to the mineral title at the time of the severance. Otherwise, the owner of the mineral title would be powerless to exercise dominion over or to enjoy the fruits of his investiture. As said in Cates v. Greene, Tex.Civ. App., 114 S.W.2d 592, at page 595: "Whatever view may be taken of the deferred rental payments, we think it clear that the obligation to pay such rentals in the future constitutes an incident of title. The rule is now settled that ordinary rentals for the use of real property follow the title to the property. In the absence of an express agreement, the grantee acquires the right to such rentals as accrue after the conveyance. Accrued rentals, of course, do not so pass. 27 Tex.Jur. p. 97, § 35. The same principle should apply to payments which the lessee in a mineral lease has the option of making in order to extend the exploratory period of the lease. *Such optional right of extension constitutes a charge upon the mineral estate;* and, where the owner of the fee and reversionary interest in the minerals conveys the entire

title, his reversionary interest passes to his grantee." (Emphasis supplied.)

After the severance the surface owner may not grant any character of mineral lease, or deprive the mineral owner or his lessee or assignee of the right to use the surface for the purposes incident to the mineral title. The mineral owner alone may grant a mineral lease, and the reservation of delay rentals therein is incident to *his* estate and not to that of the surface owner. It is also elementary that a cotenant of the owner of an undivided interest in the mineral title may not grant a valid lease upon the interest of his cotenant. From which it follows that a lease by cotenants of undivided interests in the mineral title, providing for delay rentals, vests the ownership of those rentals in the cotenants in proportion to their interests in the mineral estate. Therefore, R. H. Harris (as an incident to his reserved mineral title) was the owner of one-half interest in the delay rentals which accrued February 20, 1942, and it only remains to consider whether that interest passed by the terms of the grant to appellants.

It is the general rule that a grant of the entire estate in land carries with it the right to future rentals accruing under existing leases whether of the surface or minerals. Cates v. Greene, above. As was said in Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, 544: "Broadly speaking, a reservation of minerals or mineral rights without limitation would include royalties, bonuses, and rentals. A conveyance of land without reservations would include all minerals and mineral rights."

In the grant here involved no reference was made to the Humble leases, and the wording of the grant expressly conveyed "the one-half (1/2) interest in all oil, gas and other minerals reserved by R. H. Harris" in his deed to F. L. Harris. That reservation manifestly included one-half interest in all future delay rentals to the extent of the title reserved by appellee; which reservation passed to appellants under their grant from appellee. Such is the clear import of the language of the grantor (appellee). Were there a substantial doubt as to the import of the language it should be resolved in favor of appellants under the general rule that a grant is construed most strongly against the grantor as passing the greatest estate of which the language is susceptible. See 14 Tex.Jur., p. 916, § 138.

While the exact question here presented does not seem to have been authoritatively adjudicated by our Supreme Court, we think the above conclusions are necessarily deducible from the above authorities.

We think it proper to advert to certain decisions by the Courts of Civil Appeals which may have incidental bearing upon the issue at bar.

The following cases in principle we think support our conclusions: Walker v. Ames, Tex.Civ.App., 229 S.W. 365; Collins v. Stilger, Tex.Civ.App., 253 S.W. 572; Way v. Venus, Tex.Civ.App., 35 S.W.2d 467. These cases are clearly distinguishable from Guess v. Harmonson, Tex.Civ.App., 4 S.W.2d 124, as expressly held in Way v. Venus.

In Mineral Investing Corp. v. Bishop Cattle Co., Tex.Civ.App., 49 S.W.2d 532, the assignment was upon a printed form which had a provision expressly conveying the delay rentals. That provision was deleted and it was held (correctly we think) that delay rentals were intended thereby to be excluded. The judgment in that case was affirmed upon a question of practice, the merits of the decision not being considered. 124 Tex. 387, 78 S.W.2d 174.

In addition to the delay rentals accruing February 20, 1942, appellants sought adjudication of their rights to rentals that might thereafter accrue. As stated, the judgment was rendered in November, 1942. No further rentals would accrue until February 20, 1943, and the appellee's mineral title would lapse March 7, 1943, unless oil were produced by that time. Appellants' right to all or only a portion of the rentals (if paid) accruing February 20, 1943, and their right to rentals accruing after that date, are questions in which Mrs. Lulu C. Harris has an interest, which may not be adjudicated in this case, to which she is not a party. We think, therefore, the judgment in this case should be without prejudice to the rights of appellants, if any, accruing after November, 1942.

The trial court's judgment is reversed, and judgment is here rendered in favor of appellants against appellee for $3,520, with 6% interest thereon from February 20, 1942, and all costs of suit; without prejudice, however, to appellants' subsequently accruing rights, if any, under their grant from appellee.

Reversed and rendered.