## WILSON v. TEXAS CO.

### No. 15214.

Court of Civil Appeals of Texas. Fort Worth.

March 2, 1951.

Rehearing Denied March 30, 1951.

Garrett & Garrett, of Fort Worth, and Joe H. Cleveland, of Bowie, for appellant.

**650**

Wm. E. Loose, of Houston, Johnston S. Rowe and William N. Sands, both of Fort Worth, for appellee.

HALL, Justice.

Appellant Mrs. Nettie L. Wilson sued appellee The Texas Company in the District Court of Montague County, Texas, alleging that appellee unlawfully entered upon her 539 acre tract of land situated in said County and damaged its surface in the sum of $200 by drilling shot holes and conducting geophysical operations thereon; further damage was due her in the sum of $5 per acre for the wilful and malicious trespass of appellee by wrongfully taking from her, without payment, a privilege she alone had the right to grant, to-wit, conducting geophysical operations upon said land.

Appellee defended by moving the court to abate and dismiss appellant's suit for misjoinder of inconsistent causes of action, for the reason they were based upon the same alleged facts, to-wit, (1) a cause of action for conversion of an alleged privilege upon plaintiff's land, and (2) cause of action for damages growing out of a trespass committed by appellee upon appellant's land. It further entered a plea of not guilty and alleged that if it unlawfully entered upon said land same was not done wilfully, wantonly or maliciously, but was done in good faith through accident or mistake; that it was withholding from appellant no right which she might have in conducting geophysical explorations upon her land by reason of such entry.

Upon conclusion of the testimony of both parties, the court, on motion of appellee, instructed a verdict against appellant. Her appeal consists of five points.

Points one, two and four are as follows:

1. "The trial court erred in holding that the plaintiff was not entitled to damages from the defendant for wrongfully trespassing upon the plaintiff's land and usurping the privilege of shooting the same with seismograph equipment."

2. "The unexpired oil and gas lease being owned by strangers to the lawsuit, with whom defendant did not attempt to connect itself, the trial court erred in instructing the jury to return its verdict against plaintiff upon the theory that she had by the execution of such oil and gas lease, parted with the right to grant the privilege to other parties to shoot her land with geophysical equipment."

4. "The trial court erred in instructing the jury to return its verdict against plaintiff when plaintiff had proven that there was no market value for a permit granting shooting privileges in Montague County, Texas, and the plaintiff had testified that the intrinsic value to her for such privilege was the sum of $5.00 per acre and there was no evidence from any source putting a lesser price on such privileges."

We overrule appellant's points one, two and four because the testimony reveals that the land in question was under two oil and gas leases, both providing, among other things, as follows: " * * * That the lessor for and in consideration of Ten Dollars ($10.00) * * * has granted, demised, leased and let and by these presents does grant, demise, lease and let unto said lessee, with the exclusive right to prospect, explore, by use of core drills or otherwise, to mine, operate, produce, store and remove therefrom oil, gas, * * *." Appellant, having sold the exclusive right to do seismograph operations upon her land, did not retain a right to re-sell said privileges to anyone else and therefore appellee could not usurp said authority from her.

We recognize the right to enter upon lands of another for the purpose of making geophysical surveys, such as the one in question here, is a valuable property right which belongs exclusively to the owner of land or minerals and that an unauthorized invasion would render the invader a trespasser and liable for damages resulting to the owner. In this phase of appellant's case, she alleged that the trespass acts of appellee created the following cause of action: it "wrongfully took without payment a privilege upon the Plaintiffs land, which privilege it was Plaintiffs right to grant or to withhold; * * *."

We do not find it necessary to decide whether or not such allegation pleads a cause of action because, as having heretofore stated, she had sold such privileges; be that as it may, whatever privilege she may have retained to lease her land for seismograph purposes, she maintained after appellee had left her premises.

■ Appellant relies upon a holding in the case of Shell Petroleum Corporation v. Scully, 5 Cir., 71 F.2d 772, 776, to support such a cause of action, wherein the court said: "This is simply and only a case in which the defendant has wrongfully taken, without payment, and may be held to pay for, a privilege on. plaintiff's land, which it was plaintiff's to grant or to withhold." Said holding in the Scully case may have recognized a cause of action maintainable for conversion of a privilege pertinent to and a part of realty in Louisiana. Such a cause of action for conversion of realty would be untenable under Texas law. Shell Petroleum Corporation v. Moore, 5 Cir., 1931, 46 F.2d 959; Smith v. Jaggers, Tex. Civ.App., 16 S.W.2d 969, writ dis.; Batson v. Coley & Wilson, Tex.Civ.App., 59 S.W.2d 445; Cage Bros. v. Whiteman, 139 Tex. 522, 163 S.W.2d 638; Wedgworth v. City of Fort Worth, Tex.Civ.App., 189 S.W.2d 40, writ dis.; 31A Tex.Jur., p. 924, sec. 537; 42 Tex.Jur., p. 513, sec. 6 and p. 515, sec. 9.

Holding in the Scully case is founded upon the construction of a statutory enactment relating to unlawful prospecting or conducting geophysical operations in the state of Louisiana, and therefore is not an authority for Texas.

We are neither enumerating nor are we passing upon the many different causes of action which may be brought by a land owner or a mineral owner for the unlawful entry thereof and obtaining geophysical information therefrom.

Finding that appellant proved no cause of action against appellee in this phase of her case, we sustain the trial court's action in instructing a verdict.

Appellant's points three and five are:

3. "The trial court erred in instructing the verdict because the uncontroverted testimony showed that defendant had committed a trespass upon the privately owned and enclosed land of plaintiff, breaking a padlock to enter same, and plaintiff was entitled to have the jury assess the amount of damages."

5. "The trial court erred in instructing the jury to return its verdict against plaintiff, in the light of the uncontroverted testimony showing some damage to the surface of plaintiff's land, the court holding that because there was no diminution of the rents received by the plaintiff, that she suffered no damages as a consequence of the trespass."

■ It is admitted by appellee that the seismograph crew which it had employed unlawfully entered upon appellant's premises. It introduced evidence, however, that it was under the apprehension it had secured the right of entry from one John Black, who owned the surface rights on about 40 acres of the land in question and claimed to be the agent of appellant. As stated in Ohio Oil Co. v. Sharp, 10 Cir., 135 F.2d 303, 308, "It is well settled that one who invades or trespasses upon the property rights of another, while acting in the good faith and honest belief that he had the lawful and legal right to do so, is regarded as an innocent trespasser and liable only for the actual damages sustained," citing many cases.

In this second phase of appellant's case, she alleged that her surface had been damaged in the sum of $200 by reason of appellee's geophysical operations, as follows: "The Defendant * * * willfully and maliciously broke the lock and the chains on the gate to said pasture, entered therein with several dual wheeled trucks and begin to systematically 'shoot' the lands belonging to your Plaintiff and drilled and shot a double row of holes entirely across this property, damaging and injuring the surface of the land by mutilating and destroying the turf where each of such shot holes was drilled; and, at the particular identical time, the ground being soft from winter rains, cut great ruts into the surface of said land further damaging the turf and the surface of her land."

Appellee contends that even though appellant proved some damage to the grass which was leased to another party, she did not prove, in dollars and cents, any amount of damage to her land which would support a judgment. We have read all testimony in the case and find none which fixes the amount of damage done to her land.

Having found no error, judgment of the trial court is affirmed.