**PHILLIPS PETROLEUM COMPANY
and Geophysical Services, Inc.,**

v.

**Elliott F. COWDEN et al.**

**No. 16039.**

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1957.

Rehearing Denied March 18, 1957.

---

Horace N. Burton, Carl W. Jones, Midland, Tex., John McCormack, Dallas, Tex., Wm. J. Zeman, Rayburn L. Foster, Harry D. Turner, Bartlesville, Okl., for appellant.

Raymond A. Lynch, Robert M. Turpin, ·Midland, Tex., Turpin, Kerr & Smith, Midland, Tex., of counsel, for appellees.

Before BORAH, TUTTLE and CAM-'ERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an ·appeal from a judgment of the trial court, sitting without a jury, awarding· $53,640.00 in damages for trespass to the mineral estates of appellees upon a finding that a reflection seismograph survey on. lands in which .appellees owned the mineral · rights .amounted to a trespass as to them, and that the damages awarded represented the market value and also the value to appellants · of the exploratory right ·wrongfully appropriated.

The facts necessary to a decision of the case are not seriously in dispute, ex-·cept as to the element of damages. As ·to this the dispute is primarily one of the measure to be used and is thus also a question of law. These facts are:

Plaintiffs below are the owners of the mineral estate in the lands in question, 2682 acres of land in Ector County, Texas, in which county defendant Phillips has important oil interests. Neither Phillips nor Geophysical Services, Inc. has any interest or estate of any kind in the lands or minerals in· the said 2682 acres.'

In August, September, and October of 1953, appellant Phillips, through the employment of appellant Geophysical, caused a seismic survey by the reflection method to be made in the vicinity of the Harper Field, Ector County, Texas. Appellants' entry and activity at six locations ranging east-west across ·Sections 31 and 32, Block 43, form the basis of the District Court's findings and award for appellees. Appellants made no phys-.ical entry upon any of the other tracts comprising the 2682 acres in which appellees owned the minerals.

While the legal effect of the conveyances which severed the surface estate from the mineral estates is in question, ·the facts as to ownership of the land at all times pertinent to suit were stipulated and undisputed. The mineral estate in 1630 acres was owned jointly by appellees Wright E. Cowden and Ida Elizabeth Oliver, and the mineral estate in 1,052 acres was owned by appellee Elliott F. Cowden. The surface estate in Sections 31 and 32 upon which entry ·was made, and also in all the remaining land except a portion in Section 28, was owned by Paul Moss, under whom appellants claim legal authority to conduct ;the kind of survey which was made.

On August 20, 1953, and prior· to commencement of the survey, appellant Phil-.lips obtained the verbal permission of Paul Moss to use the land owned by him ;for conducting the survey in considera-,tion of damage payments of $50.00 for each single hole shot and $100.00 for each pattern hole shot. Moss did not purport to act for the mineral owners insofar as their rights might be affected.

Also, prior to commencement of the .survey, Phillips sought to obtain permis-·sion of the mineral ownership. It was stipulated that on or about August 20, 1953, an employee of Phillips, Fred Forward, communicated with Elliott F. Cowden in a telephone conversation with

regard to the seismic work which Phillips desired to conduct on or in the vicinity of the lands involved. The testimony relative to the substance of the telephone conversation was conflicting. Accepting Mr. Cowden's version of the conversation, the trial court found that the seismograph operation on lands in Block 43 was conducted without appellees' permission.

It was shown by uncontradicted testimony that the purpose of the survey as a whole was to evaluate the deeper horizons underlying the Harper Pool area located generally in the central part of Block 44, not the lands in dispute. The specific purpose of the six locations in Block 43 was to project a single line or profile eastward into Sections 31 and 32, the land in dispute, in order to identify the detailed work in Block 44 with the known depth of a well known as the "Stanolind 1–E Cowden" located in the Southeast Quarter (SE/4) of Section 32, which was referred to in the testimony as an attempt to obtain "well control" for the survey.

The physical and mechanical features of the survey appeared also without dispute. The seismograph crew and equipment consisted of 16 men, 14 trucks, 3 trailers and other equipment. The entire survey consumed 34 working days, 29 of which were spent on land in Block 44, not here involved, and 5 of which were spent on Sections 31 and 32, Block 43, appellees' tracts. In the entire survey there were 47 shot point locations, 6 of which were on appellees' tracts in Block 43, the remaining 41 locations being on lands in Block 44. At the six locations in Sections 31 and 32, Block 43, the crew made 15 seismic shootings, one of such shots being a single shot and the other 14 being pattern shots; when these shots were made, vibrations traveled in all directions from each shot point and the vibrations traveling downward through the earth were reflected by various geological formations back to the surface and the impulses were received on recording instruments called geophones or seismometers.

Appellants contend that the actual area "occupied" by the vibrations to the extent that they were theoretically or probably reflected and received in the recording devices to produce a single reading at intervals along the east-west line of the shots was restricted to a calculated 81.8 acres of the total of 2682, but the court apparently accepted appellees' contention that the data from these shots could be correlated with geological information from other sources so as to permit interpretations as to the entire property.

The contention of appellants that the uncontradicted testimony of expert geophysicists was that the seismograms were so poor in quality that they were unreliable and essentially worthless, and thus the results of the alleged trespass proved to be of no value to appellants, is unavailable as a basis for review in the view we take of the case.

Whether or not the tests were designed or calculated to evaluate appellees' minerals or would have evaluated them if the records had been good were disputed and contradicted issues. These facts were decided against appellants and, not being clearly erroneous, these findings cannot be disturbed.

The district court found that appellees owned the minerals in their respective tracts with the exclusive right to use the surface thereof for the purpose of conducting seismograph exploration and with the exclusive power to permit or deny others such right; that Paul Moss as the surface owner had no right to permit seismograph exploration of the land and that appellants had no legal right to conduct seismograph exploration on the land; that by entering upon the lands for the purpose of conducting seismograph exploration appellants unlawfully trespassed on the land and appellees' rights therein; that the seismograph work done on appellees' land constituted and was calculated to result in investigation and exploration, and was such as to be reasonably expected to reveal geophysical and geological information as to all of the 2682 acres involved

in the action; that the market value of the right to conduct said seismograph explorations and also the reasonable value to appellants of exercising such right was the sum of $53,640.00. Upon these findings, and others not deemed pertinent here, judgment was entered for $53,640.00, apportioned on an acreage basis among the appellees.

As we view it this appeal involves several important questions. It must be determined whether there is any cause of action at all that might be asserted against these appellants, and if so whether it may be asserted by the owners of the mineral rights in the present situation. It must then be determined what the correct measure of damages is and whether the findings of the trial court are sufficient to establish the amount of the liability. Neither party has cited nor has this Court been able to discover any decisions of the Texas courts directly in point or even such as would offer substantial guidance, and thus we appear to be in the unhappy position of having to pioneer in this important area of state law.

There can be no doubt that in Texas the right to explore for oil and minerals is a valuable property right that can be legally protected. It further appears that this right is ordinarily an attribute of the mineral ownership rather than of the surface estate. Currie v. Harris, Tex.Civ.App., 172 S.W.2d 404, affirmed, 142 Tex. 93, 176 S.W.2d 302; Stanolind Oil & Gas Co. v. Wimberly, Tex.Civ.App., 181 S.W.2d 942; Wilson v. Texas Co., Tex.Civ.App., 237 S.W.2d 649; 31-A Tex.Jur., Oil and Gas § 537; Wallace Hawkins, "The Geophysical Trespasser and Negligent Geophysical Explorer," 29 Texas L.Rev. 310, 313. This conclusion appears reasonable if it is considered that in many instances an unexplored mineral right has only a speculative value which upon investigation may prove to be either far in excess of or considerably less than the real value of the deposits it represents. It is both public knowledge in general and it appears from this record in particular that the right to explore for minerals has a considerable monetary value and it thus follows that it must generally be vested exclusively in either the mineral or the surface owner (or at most jointly in both) since if each had the independent right to explore or to permit exploration the right of neither would in fact be protected. Since mineral rights are in the first instance almost always purchased as speculations and are often resold as such a number of times it would be a peculiar rule that would permit the owner of an entirely different estate, the surface, to reduce or to sell the right to reduce to a certainty, and thereby change the whole basis of the valuation of information about property belonging to another that can only be obtained by investigations carried out at the site of the mineral estate.

Appellants here contend that the above principles are not applicable as to them because they had no intention of exploring the mineral estate of the appellees, since they purposed only to obtain more complete information about their own neighboring property. In effect they contend that even though the right to explore a particular mineral property by investigations carried out at the site of that property is the exclusive privilege of the owner of those mineral rights, the right to use the same site as a base for exploring other property belongs to the surface owner. Though this contention may have merit to the extent that a mineral owner's easement to invade the surface for the purpose of exploring and exploiting his own property does not extend to the point where he may himself or permit others to invade the surface for the purpose of exploring neighboring property, this at most gives the surface owner a concurrent but not an exclusive right to forbid such investigation, for almost inevitably any test carried out to obtain information about neighboring property will be still more informative about the site of the test itself. Thus in the present instance the trial court explicitly found that the tests "constituted investi-

gation and exploration for oil, gas and other mineral purposes" and "were reasonably expected to reveal geophysical and geological information as to \* \* \* the \* \* \* land involved in this action."

Appellants rely heavily on Shell Petroleum Corp. v. Puckett, Tex.Civ.App., 29 S.W.2d 809, 810, in which lessees under an instrument leasing land "for the sole and only purpose \* \* \* of mining and operating for oil and gas and of laying pipelines and of building tanks, power stations and structures thereon to produce, save and take care of said products" unsuccessfully sued a by them unauthorized explorer for damages measured by "the reasonable market value \* \* \* for the right and permission to explore and search for oil \* \* \*." [1]

However appellants also cite Wilson v. Texas Co., Tex.Civ.App., 237 S.W.2d 649, 650, in which another Texas court held that a lessor who had "granted \* \* \* the exclusive right to prospect, explore, by use of core drills or otherwise, to mine, operate, produce, store and remove therefrom oil, gas \* \* \*" to another, could not sue a third party for carrying on exploratory work on the leased property, for plaintiff "having sold the exclusive right to do seismograph operations upon her land, did not retain a right to re-sell said privileges to anyone else and therefore appellee could not usurp said authority from

her." The court goes on to suggest that "we recognize the right to enter upon lands of another for the purpose of making geophysical surveys \* \* \* is a valuable property right which belongs exclusively to the owner of land or minerals and that an unauthorized invasion would render the invader a trespasser and liable for damages resulting to the owner" and that there may be "many different causes of action which may be brought by a land owner or a mineral owner for the unlawful entry thereof and obtaining geophysical information therefrom."

Though at first blush these cases appear to be either squarely contradictory or to support appellants' contention that in spite of the dicta in each case there really is no cause of action that anyone may assert against a "geophysical trespasser" it appears that both the holding and the dicta of the two cases can be easily reconciled by distinguishing the terms of the leases in each instance: in the former the lessees' grant was "for the sole and only purpose of mining" and thus they were held not to have an *exclusive* right to explore; in the latter the grant was of the "exclusive right to prospect" and therefore the lessor had precluded himself from maintaining an action.

In the present instance no mere lease of the mineral rights is in-

[1]. The opinion of the court reversing a judgment on a jury verdict for lessees (appellees) is as follows:

"Appellant insists that the right conveyed to appellees 'of mining and operating for oil and gas' on the land did not pass to them a right to resort to seismographs as a means of determining whether there was oil or gas thereon or not; and that, owning no right to resort to seismographs, appellees should not have been heard to complain because appellant resorted to them for such a purpose, if it did. We think a right to prospect for oil and gas was incidental to the right conveyed to appellees to mine and operate for same on the land, and are inclined to think that in prospecting for such minerals appellees had a right to resort to seismographs. But in disposing

of the appeal we do not think it necessary to decide the question; for if appellees did not have such a right they had no cause to complain because appellant exercised such a right, if it did; and if appellees had such a right they were not deprived of it by any conduct attributed by them to appellant. The fact, if it was a fact, that appellant used seismographs in prospecting for oil and gas on the land did not deprive appellees of the right, if they had any, to also use seismographs for such a purpose. It appears in the record that, if injury resulted from the use of seismographs as charged by appellees, it was to the land, and that the right to recover damages therefor was in the owners of the land and not in appellees."

·volved but rather a separate and perpetual mineral estate, Currie v. Harris, supra; this is an important distinction if it is considered that even though under Texas law the lessee of the mineral rights is the owner of the minerals, Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566, the lessor has at least a certain prospective interest in the mineral estate and thus perhaps may have a legitimate curiosity as to its extent even while the lease is still in effect. Here, however, the original owners of the entire estate, the appellees, granted to Moss "the surface only" of the land and thus under no circumstance could he have a legitimate interest in investigating the extent of the mineral estate. It is true that the easement reserved by the appellees is stated merely to be "the first and superior right to * * * enter upon said land and use such part of it as may be reasonably necessary or convenient in connection with the investigation * * * thereof for oil * * *", but the failure to reserve the "exclusive" exploration right cannot here have the effect of leaving some such right in the surface owner (as in the Puckett case) for no such right was granted to him in the deed.

■ Having thus established that appellants invaded some legally protected rights of the appellees it now remains to determine to what damages the latter are entitled. It appears well established that in Texas the mineral owner may sue the "geophysical trespasser" only in trespass and not for conversion of either the information or of the right to obtain it. See this Court's holding in Shell Petroleum Corp. v. Moore, 46 F.2d 959, cited for this point in the dicta of Wilson v. Texas Co., supra, which explicitly rejects as inapplicable to Texas this Court's discussion of the allowability of damages for the invasion of exploratory rights in Louisiana contained in Shell Petroleum Corp. v. Scully, 71 F.2d 772. 31–A Tex.Jur., Oil and Gas § 537.

■ Appellants now contend that since in the present instance appellees are unable to establish any damage to their property measured by decrease in market value proximately due to the trespass, no information detrimental to value of appellees' mineral rights having been revealed,[2] they may recover only nominal damages. It appears, however, that Texas belongs to the minority of states that permit a landowner to waive the trespass and sue in assumpsit for the reasonable value of the use and occupation. Estes v. Browning, 11 Tex. 237, 246; Gulf, C. & S. F. Ry. v. Dunman, 85 Tex. 176, 19 S.W. 1073; both cited favorably for this point in Harrell v. F. H. Vahlsing, Inc., Tex.Civ.App., 248 S. W.2d 762, 772–773; 5 Tex.Jur., Assumpsit § 5; this is stated to be a consequence of the absence of rigid forms of action in Texas.

In the Vahlsing case it is stated that the measure of damages "for use and occupancy of real property or a right of way could be measured by a market rental value if such can be established upon either a tort or assumpsit theory, for when one occupied a way having an ascertainable market value, the owner thereof is deprived of this rental. It is damage to *him* and not necessarily dependent upon the assumpsit theory." 248 S.W.2d at page 773.[3] In the instant case it might thus be said that the desire of the appellants to make the survey and their willingness to pay for the privilege constituted an increment to the market value of appellees' property which disappeared when appellants, by means of their trespass, obtained the information without making any payment to the mineral owners. The expectation that a neighboring oil company wishes to make such an exploration might well be taken

---

2. Cf. Humble Oil & Refining Co. v. Kishi, Tex.Com.App., 276 S.W. 190; Thomas v. Texas Co., Tex.Civ.App., 12 S.W.2d 597.

3. See also the Restatement, Restitutions § 129, Comment (a) and Illustrations 1 and 2, for a slightly different approach arriving at essentially the same result.

into account in establishing the price at which a mineral estate is sold.

■ In any case it is necessary to establish the reasonable market value of the use appellants made of appellees' property, and this value is independent of the benefit that appellants *actually* received from that use. Gulf, C. & S. F. Ry. v. Dunman, supra; Harrell v. F. H. Vahlsing, Inc., supra; Restatement of Restitutions § 129, Illustration 2; Hawkins, supra, 29 Texas L.Rev. at 317. The trial court has found that the reasonable market value of the right to conduct the exploration was $53,640.00, which figure was evidently arrived at by multiplying a per acre price of $20 by the 2,682 acres of land on which appellees owned the mineral rights and to which the court found appellants' exploration extended.

■ Though the appellants attack the $20 per acre figure as excessive and incorrectly based on the market price of "exploration *and* lease selection contracts" relating to similar land, these distinctions were also considered by the trial court who also had the benefit of much expert testimony, and we are unable to say that his conclusion was clearly erroneous. Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A.

On the other hand it appears that the trial court's determination that appellees' recovery should be figured on the entire 2,682 acres for which they owned the mineral rights was based on an erroneous interpretation of the measure by which the recovery is to be calculated. From the record it appears that uncontradicted testimony was introduced by appellants that the information directly obtained from the several shots set off on the land in controversy related to 81.8 acres—i. e. the vibrations that were actually detected by the instruments were echoed from that large an area, though the explosions may actually have resulted in spreading vibrations still more extensively, for which, however, no detecting instruments were provided. Appellees assert and the trial court evidently found that from the information thus directly obtained it was possible by projection and extrapolation, and by correlation with other known geological data about the region, to evaluate to a certain extent the mineral potentials of the entire 2,682 acres owned by appellees (as well as that of other contiguous tracts not owned by them).

■ Upon this evidence appellees may not recover compensation for trespass to all their property, for the mere obtaining of information by extrapolation of data relating to one site does not constitute an invasion of other sites. Kennedy v. General Geophysical Co., Tex. Civ.App., 213 S.W.2d 707, 708; Hawkins, supra, 29 Texas L.Rev. at 315. If appellees had owned merely the sites of the actual shots and instruments they could not now claim compensation based on the entire acreage as to which information was revealed, any more than they do not now claim compensation based on property not owned by them that is considerably closer to the site of the test blasts than the further reaches of their own irregularly shaped holdings. Nor could they claim any compensation at all if they owned all the property except that "occupied" by the exploration. Appellees may properly be compensated only for the use of that part of their property that was "occupied" by the exploration, and, since this recovery is in effect in assumpsit, it must be irrelevant whether they or others owned contiguous property as to which information was also revealed if no trespass was committed as to it.

On the other hand appellants may not restrict their liability to merely the narrow perimeter around each hole as to which direct information was obtained— which is apparently the basis of the claim of the "occupancy" of only 81.8 acres—since the recovery in assumpsit is based on an implied promise whose assumed terms should conform fairly closely to the sort of agreement that might actually have been reached by reasonable parties, and it is unreasonable to

suppose that appellants could have obtained an exploration agreement obliging them to pay compensation only for the exactly circumscribed areas on which their instruments were placed for each explosion. We recognize that in the absence of any formula for dividing the value of information obtained about an extended territory from a test made at a particular site (analogous to the division of the flow from a well drawing from an extensive pool) it may in general be a difficult task to establish exactly what area was "occupied" by a series of small scattered explosion sites—though the problem is made somewhat manageable by the fact that there usually is a certain pattern to the exploration which may help to delimit a series of contiguous areas that are included in the scope of the survey from others that are not.

The trial court must establish what areas might reasonably be included in an agreement regarding such an exploration, considering that just as the trespasser may be held to pay only a reasonable per acre price for the rights he had invaded, regardless of how much the mineral owner claims he would have charged, so compensation need be paid only for the area reasonably regarded as "occupied" by the survey (including, but not restricted to, the areas from which vibration echoes were actually received), regardless of how many acres the mineral owner would have insisted on including in an agreement had one actually been bargained for. For this purpose evidence might be received as to the size and shape of the areas for which appellants would have had to obtain licenses in order to carry out the actual operation as they did, taking into account the particular geographic pattern of mineral ownership shown to exist here.

The judgment of the trial court must be reversed and the case remanded for a determination of the number of acres occupied by the trespass and the compensation that should be allowed therefor.