**GULF COAST REAL ESTATE
AUCTION COMPANY, INC.,**
Plaintiff-Appellant,

v.

**CHEVRON INDUSTRIES, INC.,**
Defendant-Appellee.

No. 81–1089
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 11, 1982.

Fletcher Etheridge, Houston, Tex., for
plaintiff-appellant.

McGinnis, Lochridge & Kilgore, Rick
Harrison, C. Morris Davis, Austin, Tex., for
defendant-appellee.

Before BROWN, POLITZ and WIL-
LIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case arises from Chevron's alleged
unauthorized use and occupancy of lands
for uranium exploration owned by Gulf
Coast Real Estate Auction Company (Gulf
Coast). Finding that Gulf Coast failed to
submit competent evidence of its damages
in the form of the value of Chevron's use
and occupancy, we affirm the granting of a
directed verdict in Chevron's favor.

## I.

Gulf Coast is the general partner in several limited partnerships that owned land in Jeff Davis and Presidio Counties, Texas. Ownership was of the surface estate and in some cases part of the mineral estate.[1] In late 1977 Chevron, acting through a lease broker, J. R. Nicholson, Jr., began negotiating with Gulf Coast for the right to explore and lease to mine certain portions of Gulf Coast's property. The proposed option-lease agreement was to provide Chevron with the right to explore the land for uranium for a specified option period at the end of which period Chevron would have the right and option to acquire a uranium lease covering portions of the land that it might select, upon the payment of a bonus. These negotiations, which continued at least through August 1979, did not result in an agreement, although Chevron made several offers that were all refused by Gulf Coast. At some point during the negotiations, Chevron conducted exploration operations over Gulf Coast's lands, allegedly without Gulf Coast's consent.[2] This exploration forms the basis of this lawsuit which Gulf Coast originally brought in state court against Chevron for geological trespass on its lands.

After removal of the suit by Chevron to federal court, Gulf Coast amended its complaint to allege that Chevron wrongfully and without consent used and occupied lands for purposes of exploration. Gulf Coast sought to recover damages for the reasonable value of this use and occupancy, waiving trespass and instead proceeding to trial on the theory of an implied contract to pay the reasonable value of the exploration activities. Chevron claimed that it had oral consent to explore the land from an agent of Gulf Coast and that no consent was required for flights over the property. The case was tried to a jury on January 6, 1981. At the close of Gulf Coast's case, Chevron moved for a directed verdict on the basis that Gulf Coast had failed to present any evidence of the reasonable market value of Chevron's use and occupancy of the land. From the granting of this motion, Gulf Coast appeals.

## II.

In order to recover under a theory of quasi-contract for Chevron's use and occupation of its land, Gulf Coast must establish the reasonable market value of this use, independent of the benefit that Chevron received from the use. *Phillips Petroleum Co. v. Cowden*, 241 F.2d 586, 593 (5th Cir. 1957). Gulf Coast contends that the District Court erred in finding an absence of evidence of the value of this use. First, Gulf Coast asserts that evidence was provided in the form of offers to purchase an option-lease agreement by Chevron from Gulf Coast. Second, Gulf Coast argues that it was not required to separate the value of the right of exploration from that of acquisition of a lease or to prove that exploration rights were not marketable without the complementary lease right. Third, Gulf Coast argues that it presented evidence on the proper division of the value of Chevron's use between the surface and mineral owners. Lastly, Gulf Coast contends that the District Court incorrectly excluded evi-

---

1. The parties stipulated that the land in question consisted of 88 sections, surface ownership of which was in Gulf Coast. The mineral ownership under the different sections was divided into five classes: (1) all uranium expressly reserved by persons other than Gulf Coast; (2) all minerals reserved by the State of Texas; (3) all minerals reserved by persons other than Gulf Coast; (4) some undivided interest in minerals reserved by persons other than Gulf Coast; and (5) minerals owned by Gulf Coast. Chevron asserts that the nature of the ownership by Gulf Coast is crucial since a cause of action for use and occupation for uranium and other mineral exploration may only be main-

tained by the owner of the land or the estate against which the use and occupation is alleged. Since Gulf Coast does not own all estates in the land, Chevron asserts that it has no liability to Gulf Coast for use and occupancy of the uranium estate as to 56 of the 88 sections of land.

2. Gulf Coast alleges that the exploration operations began in June 1977 and continued at least until November 1979. Chevron stipulated that it conducted take-offs and landings and overflights of the property in both the fall of 1978 and the fall of 1979.

dence of an option-lease agreement between Chevron and the Presidio Trust, a third party.

Before treating the specific contentions of Gulf Coast, it is necessary to emphasize what rights are at issue in this case. This is not a suit for damages arising from a tortious trespass. Specifically, Gulf Coast sues for the reasonable market value of the use of its property for exploration. This right is substantially different from that of an option-lease which gives the grantee not only the right to explore but also the right to enter into a lease for the property. An option-lease agreement normally includes terms for both payment for the option and any subsequent lease, including rental payments and bonuses. Such an agreement allowing exploration but providing only an option for subsequent lease is midway between a right to explore on the one hand and a lease on the other hand. Obviously, an option-lease provides greater protection for the grantee, insuring that should he invest in exploring, he retains the subsequent ability to lease the property and derive some financial benefit from the transaction. The right to explore alone contains no such assurances of further use for mining the mineral.

### III.

■ Gulf Coast's primary argument is based on the unaccepted offer of Chevron to enter into an option-lease agreement with Gulf Coast as evidence from which the jury could determine the market value of the right of exploration alone. From the record it is clear that Gulf Coast submitted no evidence of what a willing buyer and willing seller would agree upon for an option-lease agreement. All the evidence showed was offers of Chevron and counter proposals by Gulf Coast, none of which resulted in a consummated transaction. Gulf Coast's argument that the offer by Chevron is admissible as an admission against interest is not accurate since the offer, whether consummated or not, was not for the right to explore alone. The cases cited by Gulf Coast involve offers to purchase the same property interest as that which was at issue in each of those lawsuits.

While Chevron made specific offers to Gulf Coast, these offers would have provided Chevron with the right not only to explore for uranium, but the right to acquire a lease on all or part of Gulf Coast's properties and to prevent anyone else from leasing such properties. The offer to purchase the right to explore was only as a part of a total package of component rights, including the option to lease for mining.

Gulf Coast produced no evidence of the value of the right to explore without an option to lease so as to allow the jury to apportion Chevron's offer between the right to explore and the option to lease. Nor was there any evidence of similar transactions involving the purchase of exploration rights only.

Alternatively, Gulf Coast might have produced evidence that the value of the right to explore should be measured by the option-lease agreement price on the theory that an option to explore without the subsequent possibility of a lease was valueless. *Phillips, supra*, is not to the contrary. In that case we upheld a reasonable market value of the right to explore based on the market price of exploration and lease selection contracts but indicated that the distinction between the market value of the right to explore and that containing lease selection had been considered by the District Court which had had the benefit of expert testimony. Here no testimony was presented to establish that the value of the right to explore was equal to or marketable only as part of an option-lease agreement.

Because no evidence of the value of the right to explore was presented by Gulf Coast, we need not reach its third argument concerning the proper division between surface and mineral owners.[3]

---

3. The District Court stated that additional evidence of the proper division would be necessary under *Reed v. Wylie*, 597 S.W.2d 743 (Tex.

1980). We intimate no opinion on this issue. While Gulf Coast argues that Chevron's offers to Gulf Coast provided for an equal division of

## IV.

As to the exclusion of the option-lease agreement between Chevron and the Presidio Trust, this was not sufficiently comparable. Like the unaccepted Chevron offers to Gulf Coast, this agreement granted Chevron a broad spectrum of rights, rather than simply the privilege to explore for uranium. The Presidio Trust agreement contained provisions authorizing exploration and subsequent leasing and determining payments for bonuses, rentals, royalties and surface damages. Although the District Court has broad discretion in admitting evidence of comparable sales, *United States v. 320.0 Acres of Land, More or Less*, 605 F.2d 762, 798–99 (5th Cir. 1979), we find no abuse of discretion in excluding the evidence of the Presidio Trust option-lease since, as indicated above, this is not evidence of a comparable sale because it covers not merely the right to explore but rather a complex option-lease.

## V.

Our standard of review on motions for directed verdict is well-established in this Circuit. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc). Viewing the evidence as a whole and in the light most favorable to the party opposing the motion, reasonable men could not reach a contrary result. *Allen v. Seacoast Prod-*

*ucts, Inc.*, 623 F.2d 355, 359 (5th Cir. 1980); *Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.*, 656 F.2d 186, 189 (5th Cir. 1981); *Excel Handbag Co. v. Edison Brothers Stores, Inc.*, 630 F.2d 379, 384 (5th Cir. 1980). "A mere scintilla of evidence is insufficient to present a question for the jury." *Boeing, supra*, 411 F.2d at 374; *Steuber Co. v. Hercules, Inc.*, 646 F.2d 1093, 1095 (5th Cir. 1981). A jury may not rest its verdict on speculation and conjecture. *Fenner v. General Motors Corp.*, 657 F.2d 647, 651 (5th Cir. 1981); *Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877, 878–79 (5th Cir. 1977). Even when viewed in the light most favorable to Gulf Coast, there was simply insufficient evidence to submit the issue of damages to the jury since there was no basis for a determination of the value of the use of the land for exploration apart from an option-lease agreement.[4]

Demonstrative of this shortcoming of proof is that even here at the appellate stage, we are unable to find a clue of the value of the use and occupancy of the land for exploration by Chevron sought by Gulf Coast.[5]

AFFIRMED.

---

payments between the owners of surface and mineral estates, thereby constituting evidence of an equal split for division of damages, as indicated above, we do not find this offer of an option-lease equivalent to that of the right to explore. The offer providing for equal division also required that all owners, surface and mineral, must join in the lease.

4. The District Court, in explaining to the jury its ruling on the motion for directed verdict, emphasized this deficiency.

There are also other facts insofar as damages are concerned in this particular case. And it is on those facts that I have determined that there is no issue to go to the jury at this time, regardless of whether Mr. Paschal did or did not [have the authority to allow Chevron to enter onto the property]. I could not in good conscience in this case submit to you a question of damages because in my opinion there has been no proof offered from any source as .to what the use and occupancy of the [Gulf

Coast] lands was worth, whether it was worth a nickel a day, $10,000.00 a day, or $50,000.00 a day. A jury is not supposed to speculate. You are not supposed to conjecture, you are supposed to make your determination based on the facts that are present here in this courtroom. You don't know ... an opinion, [*Phillips, supra*] ... [that] said very clearly ... the ones bringing the lawsuit, have the burden of proving the value of use and occupancy of the land.

5. The only specific figures mentioned by Gulf Coast are (1) that for punitive damages in the amount of $20,000,000.00 as alleged in the original complaint, and (2) "damages within the minimum jurisdiction of this Court ... for Defendant Chevron's use and occupancy of the real estate ..." and attorneys' fees of not less than $75,000.00 as alleged in the amended complaint.