Staunton.

KIRK AND OTHERS V. HOGE AND OTHERS

September 19, 1918.

Absent, Burks and Kelly, JJ.

1. WATERS AND WATERCOURSES—*Use of Water for Mill Purposes—Easements—Case at Bar.*—Upon the partition and sale for partition of land on which a mill was situated, whereby the ownership of the mill was severed from the land through which the tail-race and waste-race of the mill flowed, the use of such races alternately in connection with the operation of the mill, by the temporary stopping of the discharge of water along the tail-race while the owners might be making necessary repairs to the mill, and the discharge of such water during such time by an overflow from a point above the mill into the waste-race, were easements (technically known as secondary easements), of an open, visible and permanent character, appurtenant to the ownership of said mill property as the dominant estate; were reasonably necessary to the enjoyment of the ownership of the mill property, and passed, by implication of law, to the grantee of the mill and his successors, as against the grantees of the land through which the races passed, without the use of any descriptive words of grant or reservation in the conveyances; such easements, upon the partition, being by implication of law charged upon the lands lying below the mill and on which such easements were then located; and those lands being thereby made servient to that extent to the mill property as the dominant estate. .

2. WATERS AND WATERCOURSES—*Easement—Extent of Easement—Use at Intervals—Case at Bar.*—The accustomed use fixed the right of use of the easements, and such easements were none the less valid because they consisted in the right of the use thereof at intervals of time, and for certain purposes, as for a diversion of water for certain repairing to be done.

2. WATERS AND WATERCOURSES—*Easement—Implied Grant—Implied Reservations.*—The easements in the instant case having been created, upon the severance of the dominant and servient estates, and such severance having been made in a manner

equivalent to a partition of the land, the conveyances making such partition, under which the appellants and appellees affected derive title, must be treated as if they were simultaneous conveyances, and the established principles governing the acquisition of easements by *implied grant* govern the case. Therefore, no question arises as to whether a *reservation* of an easement will be implied by law in the absence of any express reservation thereof.

4. WATERS AND WATERCOURSES—*Easement—Prescription.*—Owners of a mill at intervals for a period much longer than twenty years were accustomed, when repairing the mill made it necessary, to divert the water flowing along the tail-race to a waste-race. This operation of the mill and races having been under a claim of right and hostile to the rights of the landowners through whose land the races passed, the mill owners, by adverse, uninterrupted (with respect to the accustomed use), notorious and exclusive enjoyment, as against such landowners, acquired prescriptive title to such easement. And this is true also as to the riparian lower owners of land on the natural channel of the creek, from which the water was originally diverted for the use of the mill.

5. WATERS AND WATERCOURSES—*Riparian Rights—Natural and Artificial Watercourses—Use of Water.*—The natural corporeal right of riparian owners to the enjoyment of an uninterrupted flow of water is possessed by riparian owners of land on natural channels of watercourses only. Such right does not exist in the water flowing in an artificial channel. The right, of those owning land bordering upon or through which artificial channels pass, to the use of the water flowing therein, is not a natural right, nor a corporeal right, but an incorporeal right, which can be acquired only by grant, express or implied, or by prescription.

6. WATERS AND WATERCOURSES—*Prescription—Adverse or Hostile—Use of Water—Mill Race.*—Appellees, landowners, whose lands were located on the tail-race of a mill, claimed that they and those under whom they claim and derive title, had, by their long use and enjoyment of the water flowing in such tail-race, acquired title by prescription to the enjoyment of an uninterrupted flow of such water in such race. But there was never any use of the water by the appellees, or those under whom they claim, adverse or hostile to the right of appellants, the mill owners, to divert at intervals for repairs the water from the tail-race to a waste-race. The absence of such adverse or hostile element in the use relied on by such appellees—an element essential to the acquisition of right by prescription—is fatal to the claim of such appellees to a prescriptive right

to the uninterrupted use of the water in the tail-race as against appellant.

7. WATERS AND WATERCOURSES—*Diversion of Waters—Act of God.*— Where mill owners, in the accustomed operation of the mill, had the right to divert the water flowing through the tail-race of the mill into a waste-race at intervals for repairs, the circumstance that a cave occurred on the channel of the waste-race, in which the water when diverted to the waste-race sank so that it no longer passed on for the use of the lower proprietors, was not due to any act of the mill owners, and, therefore, did not deprive them of their previously acquired rights to divert the water from the tail-race to the waste-race. Such occurrence falls within what is defined in the quaint language of the common law as an "act of God," for which no man can be held responsible.

Appeal from a decree of the Circuit Court of Giles county. Judgment for complainants. Defendants appeal.

*Reversed.*

The subject of controversy in this cause is the right intended to be exercised by the appellants in connection with their operation of a certain mill property of theirs, of temporarily stopping the discharge of water along a certain tail-race from the mill while making necessary repairs to the mill, and of discharging such water by overflow from a point above the mill into a certain waste-race during the time needed to make such repairs.

The appellees, James Hoge and wife, Mrs. Josephine Snidow and H. W. Snidow own and reside upon lands located upon said tail-race and they are dependent upon the water flowing in such tail-race for its use for domestic purposes and for their live stock, and appellee, H. W. Snidow has a saw mill located on such tail-race constructed to be operated by such water.

The right aforesaid proposed to be exercised by appellants is one which they, and those under whom they claim and have derived title to said mill property, have exercised

66

in the past for approximately seventy years next preceding the institution of this suit, in practically the same manner, and continuously, as the owners of the mill property during all this time had occasion to exercise such right in the ordinary and usual operation of such mill. Nor was there any protest or objection made by appellees, or those under whom they claim and derive title, to the said accustomed exercise of said right by appellants and those under whom they claim and derive title, until a few years (some three or possibly five years) before the institution of this suit. At that time a cave, or sink, occurred in the channel of the said waste-race, from natural causes over which neither appellants nor appellees had or have any control, and when the water flowing from the mill was diverted from the tail-race to the waste-race, according to the accustomed operation of the mill as aforesaid, it would sink and disappear in the cave mentioned, and thus appellees would be deprived of its use for their purposes aforesaid. Hence, one of the appellees then protested, as he testified, with the then owner of the mill, against any future diversion of the water to the waste-race. The testimony for appellants denies such protest. However, after the time of such alleged protest, until this suit was instituted, there was no subsequent diversion of the water to the waste-race made for any appreciable length of time, nor did that become necessary in the operation of the mill, and no such diversion occurred or was contemplated by the mill owners, until just prior to the institution of this suit.

Prior to the occurrence of said cave, or sink, in the channel of the waste-race, when the water was diverted from the tail-race to the waste-race in the accustomed manner of operation of the mill, it flowed along the waste-race to a point where it made a junction with the tail-race, and thence along the tail-race; and the lands of the appellees, being situate as they were both on the tail-race and waste-

race above, or on the tail-race below such junction, were thus served with water at all times. So that, prior to the occurrence of said cave or sink, it was a matter of no concern to appellees whether said accustomed diversion of the water from one race to the other was or was not made in the operation of the mill. After such cave or sink occurred, however, any prolonged diversion of the water from the tail-race became a matter of serious inconvenience to appellees whose lands are located below the said cave or sink in the waste-race.

At the time of the institution of this suit, appellants were about to make certain necessary repairs to said mill, which would necessitate the diversion of said water from the said tail-race to the said waste-race as aforesaid, which the bill alleges would continue for a period of six weeks, and this suit was instituted to enjoin the appellants from diverting such water from said tail-race and alleges that appellants could, at small expense, construct a ditch or flume around their mill and thus return such water back into the channel of the tail-race, just below the mill, while said repairs were in progress. The decree complained of, in substance, perpetually enjoined appellants from in any way diverting said water from said tail-race or from turning it into said waste-race and from doing any acts whatever which will take the water from said tail-race, unless it be returned back into the tail-race just below the mill.

The bill in this cause also alleges that many other citizens and their families in the same neighborhood, other than the plaintiffs—who are the appellees aforesaid—are similarly situated and would suffer irreparable injury from the diversion of water aforesaid from said tail-race; and the proof shows that there are such citizens and families in the town of Pembroke (whose location is indicated on the sketch hereinafter furnished), and others located above such town on the natural channel of the stream of Little

Stony creek hereinafter more particularly mentioned, who would suffer serious inconvenience by reason of such diversion of such water; such other persons, however, not being parties to this suit.

The tail-race and waste-race, aforesaid, conducting the water from below the mill, as well as the mill race (which is not involved in this suit), conducting the water from above to the mill, are artificial channels. They were all constructed about seventy years before this suit was instituted by the then owner of a large body of land which included both the mill property of appellants and the lands of appellees, James Hoge and wife, and a portion of the land of appellee, Mrs. Josephine Snidow, and perhaps the residue of the land of the last named and the land of the appellee, H. W. Snidow. The uncertainty as to this matter is due to the fact that the record does not disclose whether one Jacob Snidow, the elder, who was the common testator and grantor of appellants and all of appellees, or one Augustus E. Snidow, who was the common testator and grantor of James Hoge and wife and of Mrs. Josephine Snidow as to a portion of her lands (but not of the last named as to the residue of her lands or of H. W. Snidow), first erected said mill, and constructed said artificial channels for their use aforesaid in connection with the operation of said mill. However, as this is immaterial to the result in the decision of the cause, it will be assumed that the said common owner of some of appellants only, namely, Augustus E. Snidow, first erected said mill, constructed said mill-race, tail-race and waste-race and first used them in connection with the operation of said mill. At that time (about seventy years before this suit was instituted), one Jacob Snidow, Jr. owned the land adjacent to and immediately below the said land of Augustus E. Snidow, and through such land of Jacob Snidow, Jr., the lower ends of said tail-race and waste-race were then constructed and first used for the

purposes aforesaid. This was done by Augustus E. Snidow, (as we will assume for the purposes of this cause).

The natural channel for said water was a small mountain stream, known as Little Stony creek, which flowed originally through the lands of said Augustus E. Snidow and Jacob Snidow, Jr., as shown in outline on the rough sketch below, which is not intended to be accurate, but suf-

ficiently so to indicate the locations material in this cause. The location of the mill; of the artificial channels of the mill race, tail-race, and waste-race; the residences of the appellees; the saw-mill of the appellee, H. W. Snidow; the divid-

ing line of the land of Augustus E. Snidow and Jacob Snidow, Jr.; the cave or sink on the waste-race above referred to; and also two caves which occurred on the natural channel of the creek about three years before this suit was instituted; will appear from such sketch.

The mill property, and the tail-race and waste-race extending below the mill for about one-fourth of a mile (to line A-B on the above sketch), are all located on land to which appellants and appellees, James Hoge and wife and Mrs. Josephine Snidow, as to a part of her land, all trace title to said common source, Augustus E. Snidow. The ownership of such land, so far as the mill and races down to said dividing line are concerned, was not severed but remained intact down to the ownership thereof by one John C. Snidow, who died intestate in 188.. (approximately 1885 or 1886, the exact date not shown by the record). Augustus E. Snidow from 1847 and the succeeding owners of such land down to the death of John C. Snidow, say to 1885 or 1886, operated said mill and used the said tail-race and waste-race in connection with the operation of the mill in practically the same manner as they had been and were intended to be used by appellants at the time this suit was instituted as above set forth; and the easements consisting in such use of the lower ends of such tail-race and waste-race, where they extended below upon the land of Jacob Snidow, Jr. (as well as where they extended above, through the said Augustus E. Snidow land), were plainly visible, open, obvious, and continuous, and such use, in the accustomed manner aforesaid was well known during such time (a period of 38 or 39 years), first to Jacob Snidow and subsequently to the appellees, Mrs. Josephine Snidow and H. W. Snidow, owners of portions of the land affected, and was without objection at any time from them or any of them to. such use.

Following the death of said John C. Snidow, in the partition and sale for partition of the lands of his estate, came a severance of the title of the land below the mill, down to said dividing line through which said tail-race and waste-race pass, from the title to the mill property. At the time of such severance, the courses of both of such races were well and plainly defined; their accustomed use aforesaid was plainly visible, open, and obvious, as used as aforesaid, and they were in fact necessary for the said ordinary and long accustomed operation of the mill. The deeds under which both the appellants and appellees claim and derive title to their respective properties, which are portions of such land, were, however, silent as to such or indeed as to any use of said races. By such deeds both appellants and appellees practically derived their titles by partition of the lands of John C. Snidow in 1885 or 1886.

Since their title to the mill property was derived as aforesaid from the estate of John C. Snidow deceased, the appellants and those under whom they claim and derive title have continued the operation of said mill as aforesaid, making use of the said waste-race and tail-race, as aforesaid, as easements appurtenant to such mill property, the same being plainly visible, open and obvious as aforesaid, during all the time, a period of certainly over 24 years, since the title to the mill property was acquired from the estate of John C. Snidow, deceased.

On the other hand those of the appellees who claim title under Jacob Snidow, Jr., and Jacob Snidow, Jr., himself, made use of said water flowing in said tail-race or from the waste-race when the water was diverted thereto as aforesaid, for domestic and other purposes, until the cave occurred therein as aforesaid, for a period many times exceeding the prescriptive period of twenty years; and those of appellees who claim title under the estate of John C. Snidow, and the others under whom they claim and derive

title, have since the partition and severance of such land aforesaid, made like use of the water flowing in said tail-race and waste-race as aforesaid for more than such prescriptive period.

*W. B. Snidow,* for the appellants.

*Williams & Farrier,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

1. We are of opinion, under well settled rules of law, that upon the partition and sale for partition of the land of John C. Snidow's estate in 188.., and thereafter, the waste-race, as well as the tail-race below the mill now belonging to appellants, and the use of such races alternately in connection with the operation of the mill, by the temporary stopping of the discharge of water along the tail-race while the owners might be making necessary repairs to the mill, and the discharging of such water during such time by an over-flow from a point above the mill into the waste-race (the respective locations of which races are shown on the sketch above), were easements (technically known as secondary easements), of an open, visible and permanent character, appurtenant to the ownership of said mill property as the dominant estate; were reasonably necessary to the enjoyment of the ownership of the mill property, and passed, by implication of law, to those under whom appellants claim and derive title, and thence to appellants, as against those of the appellees who claim and derive title to their lands from the same common source of title, to-wit, from John C. Snidow's estate, without the use of any descriptive words of grant or reservation in the conveyances under which such appellants or appellees claim and derive

their titles; such easements, upon the partition aforesaid, being by implication of law charged upon the lands lying below the mill and on which such easements were then located, and those lands being thereby made servient to that extent to the said mill property as the dominant estate. Washburn's Easements and Servitude, (3rd ed.) sec. 37, pp. 91-2; *Idem.* p. 95; Angell on Water Courses (4th ed.) sec. 142; *Idem.* sec. 153, pp. 271-2; *Idem.* sec. 155a, p. 272; *Idem.* sec. 153, p. 278; *Idem.* sec. 159; *Idem.* sec. 161, pp. 282-3; *Idem.* sec. 163, p. 285; *Idem.* sec. 166b, pp. 290-1; *Idem.* pp. 292-3; *Idem.* sec. 166f, sec. 166g and sec. 166h; 3 Farnham on Waters and Water Courses, sections 830, 831, 832a, 832b; *Bennett* v. *Booth,* 70 W. Va. 264, 73 S. E. 909, 39 L. R. A. (N. S.) 618; Note in 6 L. R. A. (N. S.) 327; Note in 26 L. R. A. (N. S.) 315.

The accustomed use fixed the right of use of the easements, and such easements were none the less valid because they consisted in the right of the use thereof at intervals of time, and for certain purposes, as for a diversion of water for certain repairing to be done. Angell on Water Courses, *supra,* sec. 143, p. 245, and sec. 153a, *supra;* 1 Minor on Real Prop. sec. 108. The easements in question having been created as aforesaid, upon the severance of the dominant and servient estates aforesaid, and such severance having been made in a manner equivalent to a partition of the land, the conveyances making such partition, under which the appellants and appellees affected derive title as aforesaid, must be treated as if they were simultaneous conveyances, and the established principles governing the acquisition of easements by *implied grant* govern the case. Angell on Water Courses, sec. 161, pp. 282-3; *Idem.* sec. 166h; 3 Farnham on Waters and Water Courses, sec. 830; 1 Minor on Real Prop., secs. 102, 103. Therefore, in the case before us, as to the right of appellants as against such appellees, all deriving title from the partition or sale for par-

tition of the lands of John C. Snidow's estate as aforesaid, no question arises as to whether a *reservation* of said rights of easement will be implied by law in the absence (as there was) of any express reservation thereof in the conveyances to appellees. We are therefore not called upon to enter here upon any consideration of the distinctions which are drawn by the authorities as to when a reservation of an easement, as appurtenant to real estate retained by a grantor, will be implied in law. See 1 Minor on Real. Prop., secs. 105, 106, 107; 3 Farnham on Waters and Water Courses, secs. 832, 832a, 832b; Angell on Water Courses, pp. 292-3, as to implied *reservations* of easements where a grantor conveys away the servient and retains the dominant estate.

2. As to the right of appellants, as against the appellees, H. W. Snidow and Mrs. Josephine Snidow (as to a portion of her land), deriving title from Jacob Snidow, Jr., the easements aforesaid having been under the claim of right and of the character aforesaid and hostile to the rights of such appellees as now claimed by them and against such rights in Jacob Snidow, Jr., under whom they claim and derive title, and enjoyed by appellants and those under whom they claim title from about 1847 until this suit was instituted, by adverse, uninterrupted (with respect to the accustomed use), notorious and exclusive enjoyment, as against such appellees and the said Jacob Snidow, Jr., a period of many times more than twenty years, the appellants long before the institution of this suit acquired prescriptive title to such easements. 1 Minor on Real Prop., sec. 108; Angell on Water Courses, secs. 201, 209, 210, 219c; 3 Farnham on Waters and Water Courses, secs. 809, 822, 827d.

3. As to the rights of appellants as against the citizens of the town of Pembroke and others, riparian lower owners of land on the natural channel of the creek aforesaid (aside

from the consideration that they are not parties to this suit), it is deemed sufficient to say that the water from the natural channel of such creek having been diverted by those under whom appellants claim title as long ago as about 1847 and such diversion having been continued and the use thereof by appellants and those under whom they claim having been of the character and manner aforesaid, what is said in paragraph next above applies as against the original rights of such citizens also, and they have been long since barred, and the appellants have acquired by prescription the right to continue such diversion of such water.

4. The observations above made apply to such easements as those aforesaid, which are of a permanent character and are necessary for the disposition of water continuously flowing from the dominant estate, so long as the accustomed operation of the mill may be continued in substantially the same way; and where the location of the artificially constructed ways or channels for the flow of the water and the use being made of them are plainly visible, open and obvious. In such case the rule applies, which is above applied, that the easements arise and exist by implication as attached or appurtenant to the dominant estate, and are charged upon the servient estates, without the existence of express words of grant or reservation thereof. A different rule has been applied to easements of a different character and for other drainage, such as for rain water, for sewerage and the like, and where the conduits therefor are concealed from view and their location in any particular direction is not a matter of any peculiar necessity. Angell on Water Courses, secs. 121, 128, 166n, 166t and 166v, relied on by appellees. But, for the reasons above indicated, such a rule has no application to the cause before us.

5. However, appellees claim that (a) as owners of the land located on said tail-race, they have the natural corporeal right to the enjoyment of an uninterrupted flow of

the water therein; and, if not, that (b) they and those under whom they claim and derive title, have, by their long use and enjoyment of the water flowing in such tail-race, acquired title by prescription to the enjoyment of an uninterrupted flow of such water in such race. These positions will be considered in their order as stated.

(a) The natural corporeal right in question is possessed by riparian owners of land on natural channels of water courses only. Such right does not exist in the water flowing in an artificial channel. The right, of those owning land bordering upon or through which artificial channels pass, to the use of the water flowing therein, is not a natural right, nor a corporeal right, but an incorporeal right, which can be acquired only by grant, express or implied, or by prescription. Angell on Water Courses, sec. 90, p. 91; 3 Farnham on Waters and Water Courses, sec. 820.

There are some expressions in some of the authorities cited and relied on by appellees (40 Cyc. p. 608, (f); 28 Am. & Eng. Ency. Law [1st ed.] p. 982), and in other authorities on the subject, to the effect that rights may be acquired by land owners on artificial channels of water courses of which they cannot be deprived; but upon close consideration of such authorities it will be found that the rights which can be so acquired must be by prescription, or by grant express or implied, and can be acquired in no other way. We venture to say that no well considered authority can be found which holds that such rights are natural rights, such as are possessed by a riparian land owner upon the natural course of a flowing stream, or that they can be acquired otherwise than as aforesaid.

As to appellees, who own parcels of the Augustus E. Snidow, subsequently the John C. Snidow, land; as we have seen above they acquired such lands subject to the easements aforesaid and, in that regard, servient to the said dominant estate of the appellants in said mill property.

Therefore, the implied contractural relations between the parties thence arising measure and fix the rights of such appellees touching the use of the water in said tail-race. Hence their right to the use of such water has always been, and was at the time of the institution of this suit, subject to the right of the appellants to divert such water into the waste-race whenever the latter had need to do so to make repairs to the mill in accordance with said accustomed use of said easements. And while it is true that such appellees had and have the right to use the water in the tail-race so long as it might or may flow therein as a result of the use of said easements by the owners of the dominant estate, such right of appellees was and is subject to be terminated whensoever and during such period of time as the necessary use aforesaid, appurtenant to the dominant estate, might or may occasion such result (3 Farnham on Waters and Water Courses, secs. 824, 827, 827b, 827c, and other authorities above cited); unless, indeed, such appellees, and those under whom they claim title, have acquired greater rights by prescription, which subject we will now consider.

(b). The use and enjoyment of the water flowing in the tail-race by appellees and those under whom they claim title to lands formerly belonging to Augustus E. Snidow, later to John C. Snidow, as aforesaid, was never in conflict with the use of said easements appurtenant to the dominant estate aforesaid and the attendant right of the owners of the dominant estate to divert the water to the waste-race as aforesaid, nor ever even claimed to be so until some three to five years before the suit, as aforesaid. There was never, therefore, any use of such water by such appellees, or those under whom they claim, adverse or hostile to the rights of appellants aforesaid. The absence of such aderse or hostile element in the use relied on by such appellees—an element essential to the acquisition of right by prescription—is fatal to the claim of such appellees to a prescriptive right

to the uninterrupted use of the water in the tail-race as against appellant. 3 Farnham on Waters and Water Courses, secs. 827d, 828; Angell on Water Courses, secs. 215a, 219a, and 219c.

As to appellees who own parcels of the Jacob Snidow, Jr., land; as we have seen above, appellants have acquired the prescriptive right to said easements. This has barred the natural rights which such appellees, or those under whom they claim title, may have once had to the uninterrupted flow of the water in the natural channel of the creek, and has vested in the appellants the right to interrupt the flow of the water in the tail-race in accordance with the accustomed use thereof aforesaid, which fixed and determined the extent of appellants' prescriptive right as aforesaid. And such appellees, equally with the other appellees, never had any natural right, as pointed out above, to the use of the water in the tail-race, an artificially constructed channel therefor. They do not claim to have derived the right to the uninterrupted use of the water by grant. As to their claim of prescriptive right to such use, the adverse or hostile element in their use of the water was absent, equally as in the case of the other appellees and, hence, they could not and did not acquire such right by prescription. Therefore, the appellees, who own parcels of the Jacob Snidow land, had not, when this suit was instituted, any right to the uninterrupted flow of the water in said tail-race as against appellants, whether by natural right, by grant, express or implied, or by prescription.

The same observations apply to the citizens of the town of Pembroke and other lower riparian owners aforesaid and to their alleged rights (were they parties to this suit), in so far as such rights appear herein to have once existed.

6. The circumstance that in recent years a cave, or sink, occurred on the channel of the waste-race, after the right of appellants aforesaid had been acquired as aforesaid, in

which the water when diverted to the waste-race sank so that it no longer passed or will pass on for the use of appellees and others, whose lands are located below, whether on the waste-race, tail-race or the natural channel of the creek, was not due to any act of the appellants in excess of their right to the use of the easements aforesaid. Such occurrence falls within what is defined in the quaint language of the common law as an "act of God," for which no man can be held responsible. That was the misfortune of the appellees and others affected, and not the fault of the appellants; and, hence, the previously acquired rights of the latter should not be thereby taken away.

7. It should perhaps be mentioned in this connection (although it can have no effect upon the rights aforesaid of the parties) that if the water above the mill-race, where it was originally diverted, were turned back into the original natural channel of the creek, it would be lost, except in times of freshet, in the caves, which have in recent years also occurred in that channel above the lands of appellees, and, hence, would not reach them in uninterrupted flow.

8. The appellee, H. W. Snidow, has certain contract rights to the use of water delivered through a certain pipe-log conduit extending from the mill-race above the mill, but as that right is not drawn in question by the pleadings in this cause, nor affected by the decree complained of, no further reference thereto need be made.

For the foregoing reasons we are of opinion that the decree complained of is erroneous and should be reversed, and that the bill and suit of the appellees should be dismissed, which will be accordingly done.

*Reversed.*