**HARRELL et al. v. F. H. VAHLSING, Inc.**

**F. H. VAHLSING, Inc. v. HARRELL et al.**

No. 12374.

Court of Civil Appeals of Texas.
San Antonio.

April 2, 1952.

Rehearing Denied May 7, 1952.

Gibbon & Johnson, Harlingen, for appellants.

Cox, Wagner, Adams & Wilson, Brownsville, for appellee.

NORVELL, Justice.

This lawsuit involves conflicting claims relating to the right to use water from a drainage ditch maintained by La Feria Water Control and Improvement District, Cameron County, No. 3, hereinafter referred to as the La Feria District. A recovery for loss of crops and for trespass was sought. F. O. Harrell and M. M. McClure were plaintiffs below (with one other who has not appealed) and F. H. Vahlsing, Incorporated (hereinafter sometimes referred to as Vahlsing), was defendant. The designations in the trial court will be used in this opinion, as both sides have appealed from the judgment rendered by the court below. The record is voluminous, consisting of 200 pages of transcript and 1267 pages of statement of facts. All issues have been well and thoroughly briefed by the attorneys for the respective parties, but a rather lengthy opinion is necessary to dispose of the matters presented. The case was submitted to a jury upon sixteen special issues. Upon motion filed in accordance with the provisions of Rule 301, Texas Rules of Civil Procedure, the trial judge set aside certain of the jury's findings and rendered judgment upon the remainder.

Harrell was allowed a judgment for $6,-438.97 against Vahlsing and McClure was awarded a recovery of $1,300. By way of declaratory relief, it was decreed that:

'a. Under an easement contract entered into between Harrell's predecessor in title and the La Feria District Harrell is entitled to use water from the district's drainage ditch upon 87.5 acres of land referred to as the Dunlap Tract. No attack is made upon this declaration or finding.

"b. The Plaintiff F. O. Harrell is entitled to use water from the drain ditch in question for use upon the tracts of land belonging to him and described in Paragraph I of the Plaintiffs' Fifth Amended Original Petition as the 'Harrell Tract' upon making proper contract with the La Feria Water Control and Improvement District, Cameron County Number 3, or in case no contract is entered into, then at just and reasonable prices and without discrimination, as provided under Article 7559 of the Revised Civil Statutes of Texas." This declaration is attacked

by defendant and will be hereinafter noticed.

c. Regardless of Vahlsing's right to use water from the drainage ditch, said rights are subordinate to plaintiffs' rights in and to the real property owned by them, and therefore Vahlsing had no right to transport water across said plaintiffs' lands without their permission.

d. The tracts known as the McClure and Yoder tracts "have the same rights with respect to the use of the water from the drain ditch in question as declared and adjudged with respect to the Harrell lands set out in favor of the Plaintiff F. O. Harrell in subparagraph (b) above."

Acting in conformity with the provisions of Rule 279, the court expressly found that the maintenance of a conduit pipe whereby water was transported over a portion of the Harrell tract to the Vahlsing tract was a proximate cause of the crop losses which the jury found were sustained by plaintiffs. The court further expressly found that F. H. Vahlsing, Incorporated, was a real party at interest in a federal court suit in which F. H. Vahlsing as an individual was plaintiff.

We first consider the complaints of Harrell and McClure relating to the judgment of the trial court.

Plaintiffs contend that under the jury findings they were entitled to judgment against Vahlsing for the sums of $2,437.50 (to Harrell) and $16,317.50 (to McClure), respectively, for the loss of approximately 121 bales of cotton. McClure was farming three tracts of land, known as the Harrell, Yoder and McClure tracts, and it is asserted that he was entitled to use water from the drainage ditch of the La Feria District in order to irrigate his crops. Vahlsing had an agreement with the district under which it purchased water within the drainage ditch for irrigation purposes. In order to transport the water from the drainage ditch to its land, Vahlsing laid an underground pipe extending from the ditch to the east boundary line of the Harrell tract, which was also the east line of the easement held by the La Feria District for its drain. By means of this pipe Vahlsing took practically all of the water from the drainage ditch, with the result that none was available for the lands being farmed by McClure. This action, according to the jury's findings, resulted in a diminished cotton crop being grown upon the lands farmed by McClure.

There is contained in plaintiffs' brief a map which discloses the position of the tracts of land involved with reference to the North Main Drainage Ditch of the La Feria District which is here involved. This ditch is shown running approximately east between the South Harrell and North Harrell tracts (Blocks 15 and 16) and thence northerly approximately parallel to the east boundary line of the north Harrell tract to a point on the east boundary line of the McClure tract and thence in a northeasterly direction through the Ballinger tract to a gate on the North Floodway. The Vahlsing tract lies to the east of the North Harrell tract. Upon the map, a canal is shown crossing the Vahlsing tract. This canal was connected with the drainage ditch by means of the underground pipe above mentioned which underlaid the Harrell tract. A suction pump was used by Vahlsing to lift the water from the drainage ditch into the canal mentioned. A copy of the sketch is here subjoined in the interest of clarity in discussing the matters incident to the physical characteristics of the properties involved.

Prior to June 30, 1947, Vahlsing had maintained and operated a pipe thirty or forty feet in length underlying lands owned by Harrell but within the water district's easement boundaries. This was done under written agreements with Harrell. The agreement covering the period of time from July 1, 1945, to June 30, 1946, provided for a rental of $25. In August of 1946, Vahlsing leased some land from Harrell and as a part of this transaction Harrell extended Vahlsing's right to maintain the pipe in question until June 30, 1947. Harrell refused to enter into a further agreement allowing Vahlsing to use the pipe. This led to litigation in the federal courts between the parties in which Vahlsing con-

SKETCH OF FEATURES IN CONTROVERSY

Scale 1"=2000 October 26, 1951

tended that the easement of the drainage district was sufficiently broad and comprehensive to allow him to maintain the pipe in question. This matter was determined adversely to Vahlsing. See Vahlsing v. Harrell, 5 Cir., 1949, 178 F.2d 622, writ of certiorari denied by the Supreme Court, 1950, 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597. During the greater part of this period of litigation, Vahlsing maintained and used the pipe underlying Harrell's land. During the cotton crop year of 1948, Vahlsing removed so much water from the drainage ditch that there was not a sufficient amount remaining to irrigate the lands being farmed by McClure. The trial court denied a recovery to Harrell and McClure for crop damage upon the theory that said parties had not shown themselves entitled to use water from the drainage ditch. In determining the correctness of this holding, two questions are presented which will be discussed in inverse order:

First, Is the right to use and control the water within the drainage district vested in the La Feria District or the owners of lands which adjoin the ditch?

Second, Assuming that the La Feria District has the right to use and control the waters within the ditch, is this fact available to Vahlsing as a defense?

■ We think that the district's ownership or control of the water in dispute is available to Vahlsing. Said defendant had a contract with the La Feria District providing that it be furnished with waters from said drainage district for irrigation purposes. Vahlsing is holding and claiming under the district and is clearly entitled to assert the district's right to the waters as against the claim asserted by plaintiffs. It is asserted that Vahlsing is a "trespasser" and its rights should be determined with reference to that status. However, assuming that the La Feria District has the right to control and dispose of the water within its drainage ditch, Vahlsing cannot be a trespasser, insofar as its right to use the water is concerned. The claim of trespasser arises from the fact that in the litigation had in the federal courts it was judicially determined that Vahlsing had no right to maintain a suction pipe under Harrell's land for, although the lands lying east of the location of the drainage ditch and west of the east boundary line of Harrell's property (a strip of thirty or forty feet occupied by a spoil bank), lay within the boundaries of the La Feria District's easement, this easement was for drainage only and did not include the right to maintain a conduit for transporting water for irrigation purposes. Vahlsing v. Harrell, 5 Cir., 178 F.2d 622. The failure of the district or Vahlsing to secure a proper right-of-way serves as an impediment to the transportation of water from the district's ditch to the Vahlsing tract because of the physical position of the ditch within the easement. It has no effect upon Vahlsing's right to receive water from the district if the district has in law the authority to control the water within its ditch. The position of the ditch within the easement presents a question of practical transportation for water which may be perhaps solved in a number of ways, such as by moving the position of the ditch to the edge of the easement, by condemning a right-of-way, or by devising other means of transportation or conduit to the Vahlsing tract. The present physical difficulty of transport does not deprive Vahlsing of its defense that the district and not plaintiffs have the right to control the use of the water within the drainage ditch.

We next consider whether the proprietory or usufructuary right to the water within the drainage ditch is with the La Feria District or the plaintiffs. The claim of the district here asserted by Vahlsing is based upon the theory that the waters here involved are essentially "developed waters," in that the supply thereof has been in a sense created or developed by the district. This claim is fortified by a permit issued by the State of Texas in accordance with applicable statutes, as will be hereinafter noticed, followed by the placing of the waters to a beneficial use.

The La Feria District is a water control and improvement district operating under the provisions of Title 128, Chapter 3A,

Articles 7880–1 et seq., Vernon's Ann.Civ. Stats. The constitutional provision applicable to the district is Article 16, § 59(a) of the Texas Constitution, Vernon's Ann. St., which provides that:

"The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation the drainage of its over-flowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto."

The district under proper permits from the State Board of Water Engineers appropriates water from the Rio Grande and distributes the same for irrigation purposes to lands lying within its boundaries. The soil of the lands within the district is largely formed of silt deposits by the waters of the river. This process has resulted in the river's being higher in elevation than the surrounding territory in some areas including that involved here, where the natural slope of the land is to the north and away from the river. In the Rio Grande delta area large flood control works have been constructed designed to protect life and property from disasterous floods. Auxiliary channels for the river, known as flood-ways, have been erected to carry excess waters to the Gulf of Mexico. One of these, the North Floodway, is shown upon the map heretofore set out. It lies to the north of the lands with which we are concerned, and the La Feria District's north main drainage ditch connects with this floodway.

The irrigation of lands in the delta area brought with it problems of drainage. The underlying strata of soil, largely composed of river silt deposits, does not form a sufficient underground drainage to carry off irrigation waters used upon the lands, with the result that artificial drainage methods must be resorted to in order to prevent the water logging and consequent spoilage of lands. The district constructed a system of borrow pits, spillways and ditches in order to provide the necessary and requisite drainage. The evidence shows that the La Feria District not only maintains a network of irrigation canals but also a corresponding system of ditches to drain off the excess water. The system employed may in some respects be likened to the arteries and veins of the human body. For the successful farming of lands in the area drainage is as essential as irrigation.

As a result of these drainage operations, waters are collected in ditches and subject to re-use for irrigation purposes. The evidence shows that the North Main Drainage Ditch herein involved, together with its tributaries drains a watershed of approximately 27,000 acres. It seems that at practically all times, including periods of drought, there is some water running in the ditch. The North Main Drainage Ditch, as well the Harrell, McClure, Yoder and Vahlsing tracts, lies without and beyond the boundaries of the district. However, the right of the La Feria District to maintain a ditch beyond its boundaries so as to connect with the floodway can not be questioned.

The evidence, as pointed out by plaintiffs in their brief, suggests that the waters ultimately reaching the North Main Drainage Ditch come from the following sources:

1. Waters accumulated in the ditch through seepage and subsurface drainage from lands through which said main ditch and its laterals pass and drain.

2. Waters originally appropriated from the Rio Grande by the district, which (a) have been liberated from conveying canal by spilling into borrow

pits or laterals of the drainage system, or (b) which after having been used for irrigation purposes are drained into connecting borrow pits and laterals.

3. Water from occasional rains which falls upon lands within the watershed of the North Main Ditch and is caught and conveyed by the drainage ditches and laterals.

4. A comparatively minor portion of the waters conveyed by the North Main Ditch (actually a portion of the waters accumulated from the source first mentioned) which comes into the ditch through seepage from the lands owned or controlled by the plaintiffs herein.

It is undisputed that the drainage system above outlined was constructed by and is maintained in working order by the La Feria District.

In view of these facts and circumstances, it seems clear that as to all other persons or agencies with the possible exception of the State of Texas (a matter hereinafter discussed), the La Feria District is possessed of a usufructuary right in and to the waters of its North Main Drainage Ditch under the doctrine of developed waters. In Ide v. United States, 263 U.S. 497, 44 S.Ct. 182, 185, 68 L.Ed. 407, the Supreme Court, speaking by Mr. Justice Van Devanter quoted with approval the following from United States v. Haga, D.C., 276 F. 41, 43:

"One who by the expenditure of money and labor diverts appropriable water from a stream, and thus makes it available for fruitful purposes, is entitled to its exclusive control so long as he is able and willing to apply it to beneficial uses, and such right extends to what is commonly known as wastage from surface runoff and deep percolation, necessarily incident to practical irrigation. Considerations of both public policy and natural justice strongly support such a rule. Nor is it essential to his control that the appropriator maintain continuous actual possession of such water. So long as he does not abandon it or forfeit it by failure to use, he may assert his rights. It is not necessary that he confine it upon his own land or convey it in an artificial conduit. It is requisite, of course, that he be able to identify it; but, subject to that limitation, he may conduct it through natural channels and may even commingle it or suffer it to commingle with other waters. In short, the rights of an appropriator in these respects are not affected by the fact that the water has once been used."

For a further statement of rules applicable to captured waters, see statement of Mr. Justice Field dissenting in Spring Valley Waters Works v. Schottler, 110 U.S. 347, 4 S.Ct. 48, 28 L.Ed. 173, loc. cit. 183. The point of dissent related to a question of state regulation, and the accuracy of the statement of Mr. Justice Field, a recognized authority in the field of irrigation and water law, as to the rule of property rights arising out of capture of waters is not questioned. See also, Spaulding v. Stone, 46 Mont. 483, 129 P. 327; 1 Wiel, Water Rights, §§ 37, 38; 56 Am.Jur. 641, Waters, § 176.

Complementary to the claims based upon the theory of developed waters, it appears that on June 26, 1940, the State Board of Water Engineers, upon application of the La Feria District, issued to said district a permit "to divert, appropriate and use from the source of supply hereinafter named, and by the means hereinafter described, an amount of the public waters of the state, to consist of the unappropriated flow of a drainage area of approximately 27,000 acres, being that portion of the La Feria Water Control and Improvement District No. 3, lying north of the Missouri-Pacific Railway, and from the drainage system of the La Feria Water Control and Improvement District No. 3, consisting of drain ditches which collect all drain, seepage, waste, flood, storm and rain water within the watershed above described, in Cameron County, Texas, not to exceed 3,227 acre-feet of water per annum, the rate of diversion not to exceed sixteen cubic feet per second of time, or so much thereof as may be necessary, when beneficially used,

for the purpose of irrigating not to exceed 1,613.5 acres of land described as follows."

Here follows a description which includes the Vahlsing, Yoder and McClure tracts. The Harrell tract was not, however, included within the metes and bounds description contained in the permit.

The jury found that the La Feria District "made use of the waters in the drainage ditch under the terms of the water permit dated September 10, 1940, for a period of three years, between the dates of September 10, 1940, and February 17, 1949," (the date plaintiff's original petition was filed).

The water permit and subsequent user would seem to wholly perfect the claim of the district to the waters within its drainage ditch. If any objection could reasonably be made to the district's claim to the waters on the ground that they were gathered together in pursuance of a plan of drainage rather than for irrigation, the permit discloses an intention to use the waters for irrigation purposes, approved by the proper state agency, followed by the necessary user prescribed by Article 7592, Vernon's Ann.Civ.Stats., which provides that:

"Whenever any appropriator of water from any stream or other source of water supply located in whole or in part within this State, shall have obtained from the Board of Water Engineers a permit for the use of water, and shall have made use of the water under the terms of such permit; or whenever any such appropriator of water shall have filed an appropriation in accordance with the laws of this State in force at the time of such filing, and shall have filed with the Board of Water Engineers a certified record of such appropriation, as required by Chapter 171 of the Acts of the Regular Session of the Thirty-third Legislature, and shall have made use of the water, under the terms of such filing or permit for a period of three years after this Act shall take effect, he shall be deemed to have acquired a title to such appropriation by limitation, as against any and all other claimants of water from the same stream, or other source of water supply, and as against any and all riparian owners upon said stream or other source of water supply."

We need not discuss in detail the history and validity of the water appropiation laws of the State of Texas, but may refer to the cases of Motl v. Boyd, 116 Tex. 82, 286 S.W. 458, opinion by Chief Justice Cureton, and Clark v. Briscoe Irrigation Company, Tex.Civ.App., Austin, 200 S.W. 2d 674, opinion by Chief Justice McClendon, for this purpose.

We are here concerned with "developed waters" followed by appropriation, and not with a matter of riparian rights. The North Main Drainage Ditch constructed and maintained by the La Feria District as a part of its drainage system is an artificial channel. It in no way takes the place of or secures water from a natural stream except that originally taken from the Rio Grande by the district for irrigation purposes. It is not contended that plaintiffs have acquired a prescriptive right to use waters from the drainage ditch.

In Kirk v. Hoge, 123 Va. 519, 97 S.E. 116, 120, it was said that:

"The natural corporeal right in question is possessed by riparian owners of land on natural channels of water courses only. Such right does not exist in the water flowing in an artificial channel. The right of those owning land bordering upon or through which artificial channels pass to the use of the water flowing therein is not a natural right, nor a corporeal right, but an incorporeal right, which can be acquired only by grant, express or implied, or by prescription. Angell on Water Courses, § 90, p. 91; 3 Farnham on Waters and Water Courses, § 820.

"There are some expressions in some of the authorities cited and relied on by appellees (40 Cyc. p. 608[f]; 28 Am. & Eng.Ency.Law [1st Ed.] p. 982), and in other authorities on the subject, to the effect that rights may be acquired by landowners on artificial channels of water courses of which they cannot be deprived; but upon close considera-

tion of such authorities it will be found that the rights which can be so acquired must be by prescription, or by grant, express or implied, and can be acquired in no other way. We venture to say that no well-considered authority can be found which holds that such rights are natural rights, such as are possessed by a riparian landowner upon the natural course of a flowing stream, or that they can be acquired otherwise than as aforesaid."

Likewise, in Fox River Flour and Paper Company v. Kelley, 70 Wis. 287, 35 N.W. 744, 749, the Supreme Court of Wisconsin said:

"The courts hold that the right to the water of a river flowing in a natural channel through a man's land, and the right to water flowing to it through an artificial water-course constructed on his neighbor's land, do not stand upon the same ground. (Citing authorities.) In the former case, each riparian proprietor prima facie is entitled to the unimpeded flow of the water in its natural channel, while in the latter case any right to the flow must rest on some grant or arrangement either proven or presumed from or with the owner of the land from which the water is artificially brought, or on some other legal origin."

Also, in Drainage District No. 1 v. Suburban Irrigation District, 139 Neb. 333, 297 N.W. 645, 651, the Supreme Court of Nebraska said:

"Nor does the claims of riparian rights aid the defendant and the interveners. We have held that land, to be riparian, must have a stream flowing over it or along its borders; and such proprietors have the right to the ordinary or natural flow of such stream. Crawford Co. v. Hathaway, 67 Neb. 325, 93 N.W. 781, 60 L.R.A. 889, 108 Am.St.Rep. 647.

"In the instant case, the drainage ditches here involved are strictly artificial creations. Neither in source nor channel do they partake of the elements of a natural stream.

" 'There is a well defined distinction between artificial streams and natural streams in artificial channels. Thus, riparian rights do not ordinarily attach to artificial streams in artificial channels.' 27 R.C.L. 1204. See Sampson v. Hoddinott, 1 C.B.N.S. 590, 26 L.J.C.P.N.S. 148; Fox River Flour & Paper Co. v. Kelley, 70 Wis. 287, 35 N.W. 744."

Other authorities supporting the rule stated in the opinions above quoted from are: Green v. Carotta, 72 Cal. 267, 13 P. 685; Annotations, 50 L.R.A. 839; 67 Corpus Juris 903, Waters, § 333; 56 Am.Jur. 624, Waters, § 155; 2 Farnham, Water and Water Rights, 1570, Id. Vol. 3, p. 2428; 1 Kinney on Irrigation and Water Rights (2d Ed.) 803, § 473.

No claim is nor can be asserted on behalf of plaintiffs to the waters of the drainage ditch under the La Feria District, for the reason that for the period of time here involved plaintiffs neither made nor attempted to make arrangements with the district for irrigation waters, although the McClure and Yoder tracts were included within the bounds of land description of the district's water permit.

Plaintiffs' claim of title to the waters in the drainage ditch rests upon the bold assertion that as they were the only persons physically able to do so, they therefore had the right to capture the water flowing through the drainage ditch, for otherwise such waters would flow unused into the Gulf and be lost. This theory must be rejected. It places undue emphasis upon mere physical position and ignores fundamental principles of the Texas law relating to the appropriation and utilization of waters. We are of the opinion that the trial court was correct in holding that plaintiffs had no title to the waters in the drainage ditch. The usufructuary right to these waters lay with the La Feria District which at great effort and expense had constructed and maintained the drainage system which brought them into being and had secured a proper permit from the State of Texas to use such waters for irrigation purposes.

We next consider defendant's points whereby it complains of the judgment rendered by the court below.

Harrell was awarded a recovery of $6,438.97, based upon the jury's answers to Special Issues Nos. 11, 12, 13 and 15. The jury found that, "The reasonable value on a monthly basis, for the use and occupancy of the site occupied by defendant's pipe" was $450.00 per month for the months of July and August, 1947, and $350.00 per month from September 1, 1947, to April 1, 1948, and from September 1, 1948, to March 2, 1949. Exemplary damages to Harrell were fixed at $800.00 by the jury and it also found exemplary damages of $1300.00 in favor of McClure.

There were numerous objections made to the issues relating to the "reasonable value on a monthly basis for the use and occupancy of the site occupied by defendant's pipe" as well as to the issues relating to the exemplary damages. However, in our opinion the essential questions raised may be determined by a consideration of the evidence.

■ There is a preliminary matter which was apparently deemed of more importance in the trial court than it assumes here. Defendant attacks that part of the declaratory portion of the judgment set forth in the forepart of the opinion (paragraph b) to the effect that plaintiffs were entitled to use water from the drainage ditch for the benefit of the Harrell tract upon making a proper contract with the district or, absent that, upon the payment of just and reasonable prices without discrimination, under and by virtue of Article 7559, Vernon's Ann.Civ.Stats. As heretofore stated, the Harrell tract is not included within the boundaries of the lands described in the water permit issued to the La Feria District by the State Board of Water Engineers, and we have held that the district, and not Harrell as a landowner, is possessed of the usufructuary right in and to the water in the drainage ditch. Article 7559 provides that the *owner of a water right* shall be entitled to the use of water upon the terms provided in his contract or in case there is no contract, then at just and reasonable

prices without discrimination. However, in this case it does not appear that plaintiffs, for and on behalf of the "Harrell tract," ever made application to the district for water at reasonable rates, or offered to contract with the district for water. Harrell's primary contention is that he as a landowner rather than the district is entitled to the usufructuary right to the water in the ditch. Obviously, any contention as to the right to use water under the statute, Article 7559, unless it should wholly exclude Vahlsing's right thereto, should be settled in a proper suit between Harrell and the district, in the event an actual controversy between them should arise. This portion (paragraph b) of the decree will be eliminated from the declaratory part thereof. Anderson, Declaratory Judgments, § 43, p. 127.

Plaintiffs' theory of damages (other than crop damages heretofore discussed) is based upon two premises:

1. That the damages sought to be recovered should be measured upon a quasi-contract basis.

2. That in applying this measure it should be held that the right to use a forty-foot strip of Harrell's property for a suction pipe would carry with it the right to use water from the drainage ditch.

■ Ordinarily, in a tort case damages are to be measured by the injury sustained by the complaining party. It is said that the cardinal rule in assessing damages is compensation to the injured party. Reaugh v. McCollum Exploration Co., 139 Tex. 485, 163 S.W.2d 620; J. C. Engelman, Inc., v. Sanders Nursery Co., Tex.Civ.App., 140 S.W.2d 500, wr. ref.; Burr's Ferry, Browndel & Chester Ry. Co. v. Allen, Tex.Civ. App., 149 S.W. 358; 13 Tex.Jur. 73, Damages, § 37.

If this rule, damage *to Harrell*, be applied, a nominal amount only could be recovered. The strip of land under which the suction pipe lay was occupied by a spoil bank and was not and apparently could not be used by Harrell for any beneficial purpose. The laying of a pipe under a spoil bank formed by dredgings of the

ditch seems a good example of trespass to realty causing no harm.

By a second trial amendment plaintiffs pleaded that:

"Plaintiffs would show that the reasonable market value, or in the alternative, the reasonable rental value, or in the alternative, the value of the reasonable use and occupancy of such site *and irrigation rights connected therewith* is $9,000 per annum or $750 per month, for each and every month in which the Defendant has wrongfully held over and all of the Plaintiffs elect to recover such value, in the alternative, and not crops during the periods hereinafter particularly set out."

It is apparent that plaintiffs sought to measure their recovery upon the value to Vahlsing of the pump site and its supposed concomitant water right. The period of occupancy involved was from June 30, 1947, to March 2, 1949, with the exception of the months of April to August, inclusive, of the year 1948; during which period plaintiffs elected to sue for crop damages. Admittedly, no market value of the pipe site was shown.

We have held that Harrell as a landowner did not have a usufructuary right to the water in the drainage ditch. This is not a case where one without lawful authority enters upon the property of another and removes something of value therefrom. Under the general American rule this would seemingly end the matter. In Raven Red Ash Coal Co. v. Ball, 185 Va. 534, 39 S.E. 2d 231, 235, 167 A.L.R. 785, it was said that:

"The general rule stated in the majority of cases we have found is that, in an action for use and occupation, or for damages to realty, based on assumpsit, the plaintiff must prove that the defendant occupied the premises with his permission, either express or implied, or that the trespasser obtained something from the soil, such as growing crops, timber or ore, and appropriated the same to his own use. If the trespasser simply used the property of another to save himself inconvenience or even expenditure of money, the owner cannot maintain an action of debt or assumpsit. See Webster v. Drinkwater, 5 Me. 319, 17 Am.Dec. 238, & note; Wiggin v. Wiggin, 6 N.H. 298; Ackerman v. Lyman, 20 Wis. 454, 478; Lockwood v. Thunder Bay River Boom Co. 42 Mich. 536, 4 N.W. 292; Hurley v. Lamoreaux et al., 29 Minn. 138, 12 N.W. 447; City of Boston v. Binney, 11 Pick., Mass., 1, 22 Am.Dec. 353; Dixon v. Ahern, 19 Nev. 422, 14 P. 598; Downs v. Finnegan, 58 Minn. 112, 59 N.W. 981, 49 Am.St.Rep. 488; Thompson v. Fox, 21 Misc. 298, 47 N.Y.S. 176; Cunningham v. Horton, 57 Me. 420; Adsit v. Kaufman, 9 Cir., 121 F. 355, 356; Woodruff v. Zaban & Son, 133 Ga. 24, 65 S.E. 123, 134 Am.St.Rep. 186, 17 Ann.Cas. 974; Hayes v. Fong Moon, et al., 127 Minn. 404, 149 N.W. 659; Cavanaugh v. Cook, 38 R.I. 25, 94 A. 663; Nelson & Wallace v. Gibson, 90 Vt. 423, 98 A. 1006; Chafin v. Gay Coal & Coke Co., 113 W.Va. 823, 169 S.E. 485; 2 Taylor, Landlord and Tenant, sec. 635; B. B. Ford & Co. v. Atlantic Compress Co., 138 Ga. 496, 75 S.E. 609, Ann.Cas.1913D, [226] 228; 3 Albany Law Journal 141; 12 Enc. of Pl. & Prac. pp. 844–847; 2 Harvard Law Review 377; Restatement of the Law of Restitution, sec. 129."

The Virginia Court, however, followed the minority rule (stemming from the dissenting opinion in Phillips v. Homfray, 24 Ch.Dis. 439, 462) and sustained a recovery of a small fraction of cent per ton of the coal transported over plaintiff's property without his consent, upon testimony that the prevailing rate of payment, or purchase of right of way tor transportation of coal across another's land was one cent per ton.

The case of Estes v. Browning, 11 Tex. 237, has been cited as placing Texas among the states following the minority rule and permitting a quasi-contract or assumpsit recovery in a land trespass case, seemingly without regard to whether or not anything of value is taken from the land. Seavey and Scott's Notes relating to Section 129 of the American Law Institute's Restate-

ment of the Law of Restitution. In the cited case, Chief Justice Hemphill noted that although there were no forms of action in Texas, "yet damages for the trespass may be waived and the value alone of the use and occupation be demanded." This seemingly is a statement that at the option of the injured party a recovery for trespass may be measured either by the actual loss *sustained by the injured party,* or upon an implied contract basis for use and occupation by way of restitution. As above pointed out, plaintiffs have sought to recover damages on both theories but for separate period of time, e. g., partial loss of crops growing from April 1, 1948, to September 1, 1948, and use of and occupation for the remainder of the period of time from July 1, 1947, to March 2, 1949.

Another example of a recovery of both types of damages for different although succeeding periods is afforded by Gulf Coast & Santa Fe Ry. Co. v. Dunman, 85 Tex. 176, 19 S.W. 1073.

It seems, however, that a monopolistic standard may not be used in determining the value of use and occupation. In Galveston Wharf Co. v. Gulf, Colorado & Santa Fe Ry. Co., 72 Tex. 454, 10 S.W. 537, 539, it appeared that the railway company has used certain lands of the Wharf Company without its permission. A recovery for use and occupancy was sought. Judge Gaines, in speaking for the Supreme Court, upheld a recovery for a much smaller amount than that claimed by the Wharf Company. In the course of the opinion it was said that:

"Upon the question of the value of the use and occupation of the premises, the evidence was conflicting. One witness swore that the value was $100 per month for railroad purposes. Another put it as low as $20, but did not know what it was worth for railroad purposes. We fail to see any reason why it was worth more because a railroad might desire to use it than if an individual wanted it. It does not appear that any railroad company other than the defendant could have made use of the property. It seems to us the proper measure of plaintiff's damages was

what the plaintiff could have leased it for if the defendant had not inadvertently occupied it, and that, if the jury believed the witness who last testified as to the value, they gave an ample compensation."

 It would seem that upon principle, damages for use and occupancy of real property or a right of way could be measured by a market rental value if such can be established upon either a tort or assumpsit theory, for when one occupied a way having an ascertainable market value, the owner thereof is deprived of this rental. It is damage *to him* and not necessarily dependent upon the assumpsit theory. It is, however, axiomatic that a recovery of damages, regardless of the theory advanced to support it, must have support in the evidence. It is upon this point that plaintiffs' claim for other than nominal damages fails, and for essentially the same reason that the claim for crop damages must be rejected. The plaintiffs have not shown themselves entitled to a usufructuary right in and to the waters of the drainage ditch. All of their evidence, other than bald conclusions which must be rejected, Tennessee Gas & Transmission Co. v. Zirjacks, Tex.Civ.App., 244 S.W.2d 837, is based upon the assumption that a rightful possession of the strip occupied by the pipe would carry with it the right to use water from the drainage ditch. This assumption must be rejected for, as above stated, we hold that the usufructuary right to the water in the ditch lies with the La Feria District and not with Harrell. The value of the right of way can not be fixed so as to include the value of the right to use the water which Vahlsing acquired from the La Feria District and which he could not acquire from Harrell.

Harrell and McClure both testified as witnesses. Harrell's testimony consisted of a conclusion that the cash rental value of the right to maintain the pipe was Eighteen to Twenty Thousand Dollars per year. Plaintiffs in their brief rely upon McClure's testimony as supporting the recovery allowed by the trial court. McClure testified that the value to the use of the pipe site *to Vahlsing* was about fifteen dollars per

acre per annum for each acre in the Vahlsing tract, and that in his opinion the reasonable monthly value of the use of the pipe site, assuming that the right to take water was included, was $900 per month. McClure testified upon direct examination as follows:

"Q. Mr. McClure, could you state the reasonable value of the use of that land in question on a monthly basis, if the person acquiring the use of the land had permission to remove water or take water out of the drainage ditch in question? A. Be $900.00 per month.

"Q. Now, suppose that this piece of land here was a piece—the lease and easement and to maintain a pipe at that location had no water right at all connected with it; that is, if there was no means of taking water out of the ditch; was just a piece of land lying there. Could you state whether or not there is any value to the land without any water right? A. There would be very little, if any.

"Q. Be very little, if any, Would there be some? A. Oh, I imagine have a dollar's worth of value."

Plaintiffs' theory of recovery under McClure's testimony is made abundantly clear by their brief. They have consistently asserted that Harrell as a landowner had the right to use the water within the ditch. They maintain that position with reference to the claim for "use and occupation" damages. It is stated that plaintiffs' counsel "instructed McClure not to concern himself about any tract of land except the little site itself *and the rights that go with it.*" As to the nature of these rights, it is stated in the brief that:

"The intrinsic *'value of the water'* was not particularly considered by McClure in his testimony. Apart from the right of use, the mere ownership of particles of water flowing through the ditch toward the sea would have little value to anyone. The *'value of the use'* of the water,' the *water right* which the site afforded, was great indeed."

As we disagree with plaintiffs' contention that the pipe site as part of Harrell's land carried with it a "right to use the water" or a "water right," it follows that plaintiffs' damage claims for use and occupancy damages must be disallowed. If some other basis for an award of "use and occupation" damages be theoretically available, it is not supplied by the record before us. Under the law applicable to the facts, McClure's testimony supports a recovery for nominal damages only.

As to exemplary damages, it was categorically stated in Giraud v. Moore, 86 Tex. 675, 26 S.W. 945, that the recovery of nominal damages only can not be the basis for a recovery of exemplary damages. In the comments under Section 163 of the American Law Institute's Restatement of the Law of Torts, it is said that:

"The fact that the actor knows that his entry is without the consent of the possessor and without any other privilege to do so, while not necessary to make him liable, may affect the amount of damages recoverable against him as showing such a complete disregard of the possessor's legally protected interest in the exclusive possession of his land as to justify the imposition of punitive as well as nominal damages for even a harmless trespass or in addition to compensatory damages for one which is harmful."

Even if a departure from the rule allowing no exemplary damages when nominal damages only are shown be deemed advisable in certain land trespass cases, this is not a suitable case for such departure. Vahlsing made a claim to use of the pipe site upon the theory that the La Feria District could and had granted to him a right thereto. A vindication of that right was sought by proceedings for a declaratory judgment in the federal courts where the same was disallowed. Vahlsing maintained possession of the site while his claim was litigated, but this does not show an open and wanton intrusion upon the lands of others so as to warrant the infliction of punitive damages.

The judgment of the trial court will be reformed so as to eliminate the provisions of paragraph (b) (heretofore quoted) from

the declaratory part thereof and the damages awarded to Harrell and McClure and against Vahlsing will be reduced to the nominal sum of one dollar. As so reformed the judgment will be affirmed.

Reformed and Affirmed.